[No. B034124. Second Dist., Div. Three. June 26, 1989.]

CRAIG JOHNSON, Plaintiff and Appellant, v.
BERKOFSKY-BARRET PRODUCTIONS, INC., Defendant and
Respondent.

**COUNSEL**

B. Daniel Lynch and Tracy A. Naegele for Plaintiff and Appellant.

Kern & Wooley and Jo Anna R. Reichel for Defendant and Respondent.

**OPINION**

**KLEIN, P. J.**—Plaintiff and appellant Craig Johnson (Johnson) appeals the summary judgment entered in favor of defendant and respondent Berkofsky-Barret Productions, Inc. (BBP).[1]

Because the evidence conclusively shows an employment relationship between Johnson and BBP, Johnson is limited to workers' compensation as

---

[1] Johnson erroneously sued and served BBP as Berkosski Company.

his sole and exclusive remedy for work-related injuries. Therefore, the trial court properly granted summary judgment in favor of BBP.

FACTUAL BACKGROUND[2]

Johnson, an actor in television commercials, obtained acting jobs through a company called L'Image. Generally, L'Image directed Johnson to the shooting location of the commercial and advised him how to dress. The commercial production company then paid L'Image for Johnson's acting services and L'Image, in turn, paid Johnson after deducting its percentage fee.

On December 3, 1985, L'Image sent Johnson to the filming of an I.B.M. commercial produced by BBP in Lacy Park in San Marino, California. In answer to an interrogatory Johnson described what happened during one of the takes of the commercial as follows: "The scene was a softball game and I played the pitcher. I was instructed to dive for a grounder, miss it, and ham it up. I dove for a ground ball, landing squarely on my shoulder, causing my injuried [sic]."

On July 16, 1986, Johnson filed a civil complaint for personal injury against BBP. Johnson admitted both in answers to interrogatories and at his deposition the director and assistant director of the commercial had supervised him and instructed him how to perform.

On or about June 25, 1987, Johnson filed a claim with the Workers' Compensation Appeals Board (WCAB) against BBP for injuries arising out of the accident.

BBP filed a motion for summary judgment on February 26, 1988, on the theory Johnson was a "special employee" of BBP and therefore limited to workers' compensation remedies for the personal injuries suffered while filming the commercial.[3]

In opposition to the motion for summary judgment, Johnson claimed he was not an employee of L'Image but had hired L'Image as an agent to obtain work for him. He concludes he could not be BBP's "special employee" because he had never been an employee of L'Image.

---

[2] The facts, which we summarize in the light most favorable to Johnson, are based upon Johnson's deposition testimony and answers to interrogatories.

[3] A " 'special employment' " relationship arises when an employer "lends an employee to another employer and relinquishes to a borrowing employer all right of control over the employee's activities." (*Marsh* v. *Tilley Steel Co.* (1980) 26 Cal.3d 486, 492 [162 Cal.Rptr. 320, 606 P.2d 355].)

Although the parties have not supplied a reporter's transcript of the hearing on the motion for summary judgment, Johnson contends, and BBP does not dispute, that the trial court found Johnson's workers' compensation claim constituted an admission he was BBP's employee and granted summary judgment on that basis in favor of BBP.

CONTENTIONS

Johnson claims triable issues of material fact exist as to whether he was an employee of BBP.

DISCUSSION

1. *Standard of review.*

■ "Summary judgment is properly granted only when the evidence in support of the moving party establishes that there is no issue of fact to be tried. (Code Civ. Proc., § 437c; *Lipson* v. *Superior Court* (1982) 31 Cal.3d 362, 374 [182 Cal.Rptr. 629, 644 P.2d 822] . . . .)" (*Mann* v. *Cracchiolo* (1985) 38 Cal.3d 18, 35 [210 Cal.Rptr. 762, 694 P.2d 1134].) Doubt as to the propriety of summary judgment should be resolved against granting the motion. (*Slobojan* v. *Western Travelers Life Ins. Co.* (1969) 70 Cal.2d 432, 436-439 [74 Cal.Rptr. 895, 450 P.2d 271].)

Even though the basis of a lower court's ruling be erroneous, it will be affirmed if correct on another proper ground. (*D'Amico* v. *Board of Medical Examiners* (1974) 11 Cal.3d 1, 19 [112 Cal.Rptr. 786, 520 P.2d 10].) Thus, although we do not agree Johnson's act of filing a WCAB claim constitutes an admission of employment barring a civil action, it remains to be determined whether, as a matter of law, Johnson was an employee of BBP.

■ Where the facts of employment are not disputed, the existence of a covered relationship is a question of law. (*S. G. Borello & Sons, Inc.* v. *Department of Industrial Relations* (1989) 48 Cal.3d 341, 349 [256 Cal.Rptr. 543, 769 P.2d 399]; *Laeng* v. *Workmen's Comp. Appeals Bd.* (1972) 6 Cal.3d 771, 783 [100 Cal.Rptr. 377, 494 P.2d 1]; *Santa Cruz Poultry, Inc.* v. *Superior Court* (1987) 194 Cal.App.3d 575, 584 [239 Cal.Rptr. 578].)

2. *"Special employment" not in issue here.*

The parties presented the issue in this case to both the trial court and this court as one involving the concept of special employment. In so doing, BBP

inadvertently allowed Johnson to raise the red herring of the lack of an employer-employee relationship between himself and L'Image.

 However, accepting Johnson's contention that he employed L'Image as true for the purpose of discussion, it does not necessarily follow he cannot be an employee with respect to BBP. That is, Johnson's relationship with L'Image does not control the nature of Johnson's relationship with BBP.[4]

Thus, we need not focus on the Johnson/L'Image link in the employment chain but must only determine if Johnson is in an employment relationship with BBP.

### 3. The employee/independent contractor distinction.

Labor Code section 3351 defines an employee as "every person in the service of an employer under any appointment or contract of hire or apprenticeship, express or implied, oral or written, whether lawfully or unlawfully employed, . . ."

An independent contractor is "any person who renders service for a specified recompense for a specified result, under the control of his principal as to the result of his work only and not as to the means by which such result is accomplished." (Lab. Code, § 3353.)

 "The label placed by the parties on their relationship is not dispositive, and subterfuges are not countenanced. [Citations.] . . . [¶] . . . . [¶] . . . '[The] principal test of an employment relationship is whether the person to whom service is rendered has the right to control the manner and means of accomplishing the result desired. . . .' [Citations.] [¶] . . . While conceding that the right to control work details is the 'most important' or 'most significant' consideration, the authorities also endorse several 'secondary' indicia of the nature of a service relationship." (*S. G. Borello & Sons, Inc.* v. *Department of Industrial Relations, supra,* 48 Cal.3d at pp. 349-350.)

In order to ascertain whether an employment relationship exists, the *Borello* court cautioned that factors in addition to the right to control work

---

[4] As will be seen the factors to be considered in determining whether an individual is a "special employee" or an "employee" are essentially identical. In each case, presence of the right to control the alleged employee is the primary factor. (Compare *Marsh* v. *Tilley Steel Co., supra,* 26 Cal.3d at p. 492; and *Kowalski* v. *Shell Oil Co.* (1979) 23 Cal.3d 168, 175 [151 Cal.Rptr. 671, 588 P.2d 811]; with *S. G. Borello & Sons, Inc.* v. *Department of Industrial Relations, supra,* 48 Cal.3d at p. 350.)

must be applied on a case-by-case basis with the salutary purposes of the Workers' Compensation Act in mind.

These secondary factors include the right to discharge at will without cause, whether the alleged employee is in a distinct occupation or business, whether the work is usually done under the direction of the principal or by a specialist without supervision, the skill required, whether the alleged employee supplies tools or the place where the work is to be performed, the duration of the services, whether payment is by time or by the job, whether the work is part of the regular business of the principal and the intent of the parties.

The *Borello* court also reviewed factors used in other jurisdictions to determine whether a worker is an independent contractor. In addition to the right to control the work, these factors include: "(1) the alleged employee's opportunity for profit or loss depending on his managerial skill; (2) the alleged employee's investment in equipment or materials required for his task, or the employment of helpers; (3) whether the service rendered requires a special skill; (4) the degree of permanence of the working relationship; and (5) whether the service rendered is an integral part of the alleged employer's business. [Citation.]" (*S. G. Borello & Sons, Inc.* v. *Department of Industrial Relations, supra,* 48 Cal.3d at p. 355.)

a. *Johnson was the employee of BBP.*

█ Here, the primary right of control factor must be determined in favor of BBP. Johnson concedes the operatives of the production company directed and supervised the manner in which he performed in the commercial. Consideration of the great majority of the secondary factors in the context of this fact situation also leads to the conclusion that Johnson was BBP's employee.

BBP had the right to discharge Johnson at will without cause; although acting in commercials might be considered an occupation, it is universally done under the direction of another; Johnson did not supply tools, employ helpers or provide the place the work was to be performed; although acting in the Shakespearean sense requires skill, a far lesser degree of skill is required for acting in commercials; the duration of the services is generally short but payment appears to have been made by time and not by the job; the filming of the commercial is part of BBP's regular business; and, Johnson had no opportunity for profit or loss depending on his managerial skills nor did he invest in equipment or materials.

We therefore conclude, as a matter of law, Johnson was an employee of BBP at the time of the accident and therefore he is limited to workers'

compensation as his sole and exclusive remedy for damages resulting from personal injuries. (Lab. Code, § 3602.)[5]

### 4. *Workers' compensation remedy is exclusive even construing L'Image as a labor broker.*

■ Finally, we consider whether a different result is required if L'Image is viewed as a labor broker or agent.

This question was discussed in *Riley v. Southwest Marine, Inc.* (1988) 203 Cal.App.3d 1242 [250 Cal.Rptr. 718]. The *Riley* court concluded: "Extensive nationwide case law, . . . , hold[s] the 'special employment' or 'borrowed servant' doctrine applies to the labor brokerage situation and bars an employee who is injured while on assignment from a labor broker, such as Manpower, from bringing a tort suit against the assigned employer. [Citations.]" (*Id.,* at pp. 1251-1252.)

We perceive no reason to deviate from the *Riley* rule in this instance. Although the accounting of proceeds between Johnson and L'Image might not have mirrored the manner in which other temporary personnel providers operate, the concept remains the same. L'Image provided BBP with short-term employees from its labor pool in a fashion nearly identical to the way in which other employment agencies, such as Manpower, Employers' Overload, etc., furnish temporary personnel services.

The *Riley* court also rejected the argument that a tort remedy should be permitted to temporary employees because they receive lower pay and fewer benefits. Although this equitable exception has appeal, its logic also applies to part-time and probationary employees and "would significantly alter and contradict the intent of the workers' compensation statutory scheme." (*Riley v. Southwest Marine, Inc., supra,* 203 Cal.App.3d at p. 1259; see, e.g., *Laeng v. Workmen's Comp. Appeals Bd., supra,* 6 Cal.3d 771 (an injury sustained during a " 'tryout' " for an employment as a refuse crew worker compensable under workers' compensation as a matter of law).)

---

[5] We are aware of the recent case of *Von Beltz v. Stuntman, Inc.* (1989) 207 Cal.App.3d 1467 [255 Cal.Rptr. 755], which involved a stuntperson who suffered catastrophic injuries during the filming of a stunt for the movie Cannonball Run. The *Von Beltz* court held the stuntperson employed by the film's production company was not a co-employee or special employee of the director's wholly owned " 'loan-out' " company. (*Id.,* at p. 1474.) However, in *Von Beltz* the evidence showed the stuntperson retained substantial control over operational details of the stunt. Further, " 'where the servants of two employers are jointly engaged in a project of mutual interest, each employee ordinarily remains the servant of his own master and does not thereby become the special employee of the other. [Citations.]' [Citation.]" (*Id.,* at p. 1487.) Thus, *Von Beltz* is distinguished easily on its facts.

Thus, we agree with the conclusion reached by the *Riley* court and limit Johnson to a workers' compensation remedy.

## CONCLUSION

Johnson's concession that BBP controlled and directed every aspect of his employment and our consideration of secondary determining factors render Johnson an employee as a matter of law. As such, Johnson's exclusive remedy for his work-related injury is workers' compensation.

## DISPOSITION

The judgment is affirmed.

Arabian, J., and Croskey, J., concurred.