[No. B056936. Second Dist., Div. Three. July 17, 1992.]

B & E CONVALESCENT CENTER, Plaintiff and Appellant, v.
STATE COMPENSATION INSURANCE FUND et al., Defendants and
Respondents.

## COUNSEL

William E. Harris for Plaintiff and Appellant.

Krimen, Bjornsen & Klein, Charles Savage and Barbara Gallios for Defendants and Respondents.

## OPINION

CROSKEY, J.—B & E Convalescent Center (B & E) appeals from the summary judgment entered against it and in favor of defendant and respondent State Compensation Insurance Fund (State Fund) on B & E's action for declaratory relief, breach of contract, and insurance bad faith. The sole issue on appeal is whether, as a matter of law, State Fund was obligated to defend B & E for the claims asserted in an action brought by Dorothy Bryson (Bryson),[1] a former employee of B & E, in which she alleged wrongful termination and related causes of action, including a violation of the Fair Employment and Housing Act (Gov. Code, § 12940 et seq.; FEHA).

---

[1]Although B & E asserted in the trial court that State Fund had a duty not only to provide a defense but also to indemnify B & E for the amount of a settlement negotiated with Bryson, it only complains on appeal that State Fund improperly failed to provide a defense. Nonetheless, B & E still seeks to recover the amount of the settlement in addition to the costs

As the employee's claims in the underlying action against the insured employer consist solely of willful misconduct involving the intentional termination of the employee in violation of fundamental and substantial public policies, including those expressed in California's antidiscrimination statutes, there is no potential for coverage under the employer's liability policy because Insurance Code section 533 precludes any duty to indemnify. Under such circumstances and in the absence of any contrary provisions in the policy, the insured employer can have no reasonable expectation of a defense and there is no duty on the part of the insurer to provide one. We will therefore affirm the judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

From approximately 1977 through November 1984, Bryson was employed by B & E as the administrator of its Gardena Convalescent Center. She was discharged from her employment on November 30, 1984. Shortly thereafter, Bryson filed suit against B & E alleging causes of action for wrongful termination, breach of the implied covenant of good faith and fair dealing, intentional infliction of emotional distress, and violation of the FEHA.

In her cause of action for wrongful termination, Bryson alleged that, despite seven years of exemplary performance in her employment, B & E discharged her after she (1) refused to carry out instructions to interfere with the efforts of a union which had sought to organize the employees of the Gardena Convalescent Center[2] and (2) refused the demands of her employer that she systematically terminate the Convalescent Center employees and replace them with employees of Filipino national origin, who, the employers believed, would be less likely than others to vote for the union.[3] In her cause

expended in defense of the action. We are somewhat puzzled by this change in focus but, in view of the conclusions which we reach regarding coverage under the State Fund policy, it makes no difference.

[2]The conduct in which Bryson alleged she was required to engage would have violated section 8, subdivision (a)(1) of the National Labor Relations Act (29 U.S.C. § 158(a)(1)), provides: "(a) It shall be an unfair labor practice for an employer—

(1) to interfere with, restrain, or coerce employees in the exercise of the rights guaranteed in section 157 of this title." Section 157 (§ 7 of the NLRA) guarantees to employees the rights, among others, to self-organize and to form, join, or assist labor organizations.

[3]Such conduct would have violated section 8, subdivision (a)(3) of the NLRA (29 U.S.C. § 158(a)(3)), which provides in relevant part as follows: "(a) It shall be an unfair labor practice for an employer—¶(3) by discrimination in regard to hire or tenure of employment or any term or condition of employment to encourage or discourage membership in any labor organization. . . ."

The conduct would also have violated the FEHA, in particular Government Code section 12940, which provides, in relevant part, as follows: "It shall be an unlawful employment

of action for violation of the FEHA, she alleged she was terminated on the basis of her gender, age, and ethnic origin, in that she was a woman over 60 years of age and of English national origin and was replaced by a man, younger than she, and of Filipino descent.[4] ▮▮▮▮ The causes of action for breach of the implied covenant of good faith and fair dealing and for intentional infliction of emotional distress essentially repeated the allegations of these two principal causes of action.[5]

▮▮▮▮ B & E tendered the defense of Bryson's action to State Fund, but State Fund refused to provide a defense on the purported ground that Bryson had alleged that her emotional injuries did not arise out of and in the

---

practice, unless based upon a bona fide occupational qualification, or, except where based upon applicable security regulations established by the United States or the State of California: ¶(a) For an employer, because of the race, religious creed, color, national origin, ancestry, physical handicap, medical condition, marital status, or sex of any person, to refuse to hire or employ the person or to refuse to select the person for a training program leading to employment, or to bar or to discharge the person from employment or from a training program leading to employment, or to discriminate against the person in compensation or in terms, conditions or privileges of employment."

[4]Discrimination in employment based upon gender and national origin violates the FEHA, in particular, Government Code section 12940. See footnote 3, *ante*, for the relevant text from that section. Discrimination in employment based upon age violates Government Code section 12941, which provides, in relevant part: "(a) It is an unlawful employment practice for an employer to refuse to hire or employ, or to discharge, dismiss, reduce, suspend, or demote, any individual over the age of 40 on the ground of age, except in cases where the law compels or provides for such action."

[5]For purposes of the insurance coverage issue presented to us, we necessarily disregard these two causes of action. They simply repeat the allegations of the counts relating to public policy and statutory violations and are either redundant or charge misconduct which is not covered by liability insurance in any event and are therefore irrelevant. A claim of wrongful termination based upon the breach of the implied covenant of good faith is essentially a contract claim (*Newman* v. *Emerson Radio Corp.* (1989) 48 Cal.3d 973, 976 [258 Cal.Rptr. 592, 772 P.2d 1059]; *Foley* v. *Interactive Data Corp.* (1988) 47 Cal.3d 654, 696 [254 Cal.Rptr. 211, 765 P.2d 373]) and not within the scope of the liability coverage. (*Fireman's Fund Ins. Co.* v. *City of Turlock* (1985) 170 Cal.App.3d 988, 995 [216 Cal.Rptr. 796]. A separate claim of intentional infliction of emotional distress arising from an alleged wrongful termination cannot, simply by such characterization, escape the exclusive remedy provisions of Labor Code section 3602, subdivision (a) (*Cole* v. *Fair Oaks Fire Protection Dist.* (1987) 43 Cal.3d 148, 160 [233 Cal.Rptr. 308, 729 P.2d 743]; *Gantt* v. *Sentry Insurance* (1992) 1 Cal.4th 1083, 1099 [4 Cal.Rptr.2d 874, 824 P.2d 680]; *Livitsanos* v. *Superior Court* (1992) 2 Cal.4th 744, 754-755 [7 Cal.Rptr.2d 808, 828 P.2d 1195]) and therefore is outside the scope of the liability provisions here in issue. Thus, the coverage issue must be resolved based upon claims of wrongful termination and illegal discrimination.

course and scope of her employment,[6] and hence were not covered[7] by B & E's policy with State Fund.[8]

---

[6]We presume that Bryson's purpose in making this allegation was to avoid having her case limited to compensation proceedings under the exclusivity rule. (See Lab. Code, § 3602, subd. (a); *Cole v. Fair Oaks Fire Protection Dist., supra,* 43 Cal.3d at p. 160; *Livitsanos v. Superior Court, supra,* 2 Cal.4th at pp. 754-755.) Actually, Bryson made this allegation only in her third cause of action which was for intentional infliction of emotional distress. Specifically, she alleged, "26. Plaintiff's emotional injuries have not been caused by plaintiff's job and are not 'arising out of and in the course of her employment', but are caused by the wanton and malicious conduct of defendants in terminating the employment relationship and dealing with Plaintiff after such termination, and as a result, plaintiff's injuries are not compensable under the Workers' Compensation Act." Bryson also alleged that she had suffered "severe mental and emotional distress" with respect to each of the other three causes of action asserted by her.

Bryson's allegations, however, cannot avoid the conclusion which is compelled by an examination of the entire complaint. It is beyond argument that the misconduct with which she charges her employer arose in the "course of her employment" (*Gantt v. Sentry Insurance, supra,* 1 Cal.4th at p. 1099; *Soules v. Cadam Inc.* (1991) 2 Cal.App.4th 390, 401 [3 Cal.Rptr.2d 6]), although, as we shall explain, it clearly falls outside of the "compensation bargain" for purposes of the application of the workers' compensation exclusivity rule.

[7]At oral argument, B & E asserted that since this was the only ground asserted by State Fund for denial of coverage, it is not entitled to assert any other. However, apart from the fact that this argument was not raised in the briefs, it overlooks two points. First, State Fund's coverage denial letter of April 26, 1988, referred to unspecified "specific exclusions" in the policy upon which it was relying. Although there were apparently *no* express exclusions contained in the policy, as B & E vigorously emphasizes, the statutory exclusion in Insurance Code section 533 is an implied part of every insurance contract. (*Evans v. Pacific Indemnity Co.* (1975) 49 Cal.App.3d 537, 540 [122 Cal.Rptr. 680].) Second, if, as we conclude, coverage is proscribed by section 533, then State Fund's failure to raise it in the initial denial letter would not prevent our enforcement of that statute in the absence of some showing by B & E that State Fund intentionally relinquished such ground of objection to coverage or that B & E relied to its detriment on State Fund's failure to initially assert that ground. "In [California] cases where waiver has been found, there is generally some element of misconduct by the insurer or detrimental reliance by the insured." (*Intel Corp. v. Hartford Acc. & Indem. Co.* (9th Cir. 1991) 952 F.2d 1551, 1559; see also *Prudential-LMI Commercial Insurance v. Superior Court* (1990) 51 Cal.3d 674, 689-690 [274 Cal.Rptr. 387, 798 P.2d 1230].) No such showing is made by this record.

[8]B & E's policy of insurance with State Fund (at least the only portion of the policy included in the appellate record) contained the following provisions relating to (1) workers' compensation coverage, (2) employer's liability coverage, and (3) the duty to defend.

"1. *Workers' Compensation*

"To pay promptly and directly to any person so entitled under the Workers' Compensation Laws of the State of California, and as provided therein, any sums due for disability indemnity for injuries, and for the reasonable cost of medical, surgical and hospital treatment, including nursing, medicines, medical and surgical supplies, crutches, apparatus and artificial members: to be directly and primarily liable to employees covered by this policy, or in the event of their death, to their dependents, to pay the compensation, if any, for which the insured is liable, except the increase in any award imposed under the Labor Code Sections for serious and willful misconduct of the insured or for injury to employees under the minimum age specified in the Labor Code and illegally employed at time of injury: and, as between the

In March of 1989, Bryson settled her lawsuit against B & E. On September 25, 1989, B & E brought the present action against State Fund for declaratory relief, breach of written contract, and for insurance bad faith. On September 20, 1990, B & E filed a motion for summary adjudication of issues. On November 1, 1990, State Fund responded with its own motion for the same relief. Both motions were heard on December 4, 1990. B & E's motion was denied, and State Fund's was granted.

The court found that, as a matter of law, Bryson's complaint alleged facts giving rise only to causes of action for breach of contract and for intentional, tortious, and illegal acts by B & E, which included charges of age, sex and race discrimination, none of which causes of action fell within the scope of coverage provided by the State Fund policy.[9]

---

employees and State Fund, the notice to or knowledge of the occurrence of an injury on the part of the insured shall be deemed notice to or knowledge of the injury on the part of State Fund; and jurisdiction of the insured shall, for the purpose of the law, be jurisdiction of State Fund, and State Fund shall in all things be bound by and subject to the orders, findings, decisions or awards rendered against the insured under the provisions of the Workers' Compensation Laws of the State of California.

"2. *Employer's Liability*

"To indemnify the insured against loss by reason of liability (not assumed under any written, oral or implied contract or agreement) for damages imposed upon the insured as an employer under the laws of the State of California *on account of bodily injuries sustained by employees covered by this policy, including death resulting from such injuries, as a result of suits filed against the insured by such employees, or dependents of such employees, arising out of and in the course of their employment by the insured,* provided that the liability of State Fund is limited to $5,000,000 for all damages from one or more claims resulting from each accident or occurrence, or series of accidents or occurrences, arising out of any one event. [This liability portion of the policy is "traditionally written in connection with workers' compensation policies, and is intended to serve as a 'gap-filler,' providing protection to the employer in those situations where the employee has a right to bring a tort action despite the provisions of the workers' compensation statute . . . ." (*Producers Dairy Delivery Co.* v. *Sentry Ins. Co.* (1986) 41 Cal.3d 903, 916 [226 Cal.Rptr. 558, 718 P.2d 920]).]

" . . . . . . . . . . . . . . . . . . . . . . . .

"4. *To Defend*

"In the name and on behalf of the insured claims or suits against the insured for compensation or damages because of injuries insured against under this policy and to pay all costs of this defense, but State Fund may settle any claim or suit as it deems expedient, and, upon the request of the insured State Fund *may* defend the insured against claims or suits involving alleged serious and willful misconduct on the part of the insured." (Italics added.)

[9]At the time that the matter was argued in the trial court, counsel for B & E conceded that the only information available as to the alleged misconduct of his client was contained in the allegations of Bryson's second amended complaint. Thus, the trial court was required to make its decision on State Fund's summary adjudication motion without any evidentiary suggestion that other acts of B & E, which might have provided a basis for potential coverage, had

The granting of State Fund's motion for summary adjudication of issues disposed of all material issues in the action and summary judgment was thereafter entered in favor of State Fund. This timely appeal followed.

## CONTENTIONS ON APPEAL

B & E contends that State Fund had a duty to provide a defense, because the suit alleged causes of action which arose from injuries occurring within the course and scope of Bryson's employment. B & E further contends that State Fund was not excused from providing a defense, because the defense clause in B & E's policy of workers' compensation and employers' liability insurance with State Fund did not exclude the defense of claims based upon intentional conduct, such as wrongful termination. Finally, B & E argues that section 533 of the Insurance Code (section 533), which states that "[a]n insurer is not liable for a loss caused by the wilful act of the insured,"[10] did not exonerate State Fund from such liability because it was not alleged, let alone proven, in Bryson's action that B & E acted with "a preconceived design to inflict injury."

State Fund responds that it had no duty to defend against the Bryson action, first, because Bryson's complaint alleged injuries for which the sole remedy was under the Workers' Compensation Act, and second, because the complaint alleged only wilful and "inherently harmful" conduct for which indemnity by insurance is prohibited by section 533.

## DISCUSSION

### 1. *Standard of Review*

■ Summary judgment is properly granted when the evidence in support of the moving party establishes that there is no material issue of fact to be tried. (Code Civ. Proc., § 437c; *Mann* v. *Cracchiolo* (1985) 38 Cal.3d 18, 35 [210 Cal.Rptr. 762, 694 P.2d 1134]; *Johnson* v. *Berkofsky-Barret Productions, Inc.* (1989) 211 Cal.App.3d 1067, 1071 [260 Cal.Rptr. 67].) The trial court

---

occurred. As the trial court put it, "Very well, then. Given that, I will grant the defendants' motion for summary adjudication of issues 1 and 2. I will find that the employer's liability policy did not provide coverage for the civil complaint for either defense or indemnity, because the complaint, the entire issue of Mrs. Bryson's case as raised by her pleadings, went to intentional and malicious, tortious activity and breach of her alleged covenant of good faith and fair dealing, which of course would not be covered by this policy anyway, because it doesn't cover any contractual obligations anyway."

[10] The full text of section 533 provides: "An insurer is not liable for a loss caused by the wilful act of the insured; but he is not exonerated by the negligence of the insured, or of the insured's agents or others."

must decide if a triable issue of fact exists. If none does, and the sole remaining issue is one of law, it is the duty of the trial court to determine the issue of law. (*State Farm Fire & Casualty Co.* v. *Eddy* (1990) 218 Cal.App.3d 958, 964 [267 Cal.Rptr. 379].) These rules apply equally to the summary adjudication of specific issues. (Code Civ. Proc., § 437c, subd. (f); *Starkman* v. *Mann Theatres Corp.* (1991) 227 Cal.App.3d 1491, 1495 [278 Cal.Rptr. 543].)

Appellate review of summary judgment is limited to the facts contained in the documents presented to the trial court. This court exercises its independent judgment as to the legal effect of the undisputed facts disclosed by the parties' papers. (*State Farm Fire & Casualty Co.* v. *Eddy, supra*, 218 Cal.App.3d at p. 965; *Downey Savings & Loan Assn.* v. *Ohio Casualty Ins. Co.* (1987) 189 Cal.App.3d 1072, 1086-1087 [234 Cal.Rptr. 835].)

With the foregoing principles in mind, we examine the two arguments raised by State Fund that there was no coverage under the employer liability portion of the policy as (1) the sole remedy for Bryson's claim was workers' compensation and (2) the provisions of Insurance Code section 533 precluded both indemnity and any duty to defend.[11]

2. *Workers' Compensation Exclusivity Rule*

State Fund is incorrect when it argues that the exclusive remedy provisions of the workers' compensation act (Lab. Code, § 3602, subd. (a)) barred Bryson's causes of action for wrongful termination in violation of public policy and in violation of the FEHA. The nature of the allegations made by Bryson clearly remove this case from those which can be limited to compensation proceedings. (*Shoemaker* v. *Myers* (1990) 52 Cal.3d 1, 23 [276 Cal.Rptr. 303, 801 P.2d 1054, A.L.R.4th 1720] (*Shoemaker II*); *Gantt* v. *Sentry Insurance, supra*, 1 Cal.4th 1083, 1101 (*Gantt*); *Shoemaker* v. *Myers* (1992) 2 Cal.App.4th 1407, 1413 [4 Cal.Rptr.2d 203] (*Shoemaker III*).)

Ordinarily, injuries arising from termination of employment arise out of and occur in the course of employment within the meaning of Labor Code section 3600. (*Shoemaker II, supra*, 52 Cal.3d at pp. 19-20; *Pichon* v. *Pacific Gas & Electric Co.* (1989) 212 Cal.App.3d 488, 496 [260 Cal.Rptr. 677].) If the actions of the employer in terminating the employee "constitute a normal part of the employment relationship," injuries which result are subject to the exclusive remedy provisions of Labor Code section 3602. (52 Cal.3d at p.

---

[11]In our resolution of these two issues, we also necessarily dispose of the three contentions asserted by B & E.

18.) This is so even if the injuries flow from intentional misconduct by the employer, and even if such conduct might be characterized as egregious, manifestly unfair, outrageous, or intended to cause emotional disturbance resulting in disability. (*Id.* at p. 15; *Cole* v. *Fair Oaks Fire Protection Dist.*, *supra*, 43 Cal.3d at p. 160; *Livitsanos* v. *Superior Court*, *supra*, 2 Cal.4th at pp. 754-755.) A separate civil action for damages may lie, however, where an employee is injured as the result of employer misconduct, whether in the form of discharge or otherwise, not seen as reasonably coming within the "compensation bargain." (*Shoemaker II*, *supra*, 52 Cal.3d at p. 20.)[12]

In *Tameny* v. *Atlantic Richfield Co.* (1980) 27 Cal.3d 167 [164 Cal.Rptr. 839, 610 P.2d 1330, 9 A.L.R.4th 314] (*Tameny*), our Supreme Court held that an action in tort lies for wrongful discharge in retaliation for an employee's refusal to participate in conduct of the employer which constituted a criminal act. (27 Cal.3d at p. 178.) More generally, the Supreme Court suggested in *Tameny* that an action in tort lies for any wrongful termination in contravention of a fundamental public policy. (*Id.* at p. 177.) In *Foley* v. *Interactive Data Corp.*, *supra*, 47 Cal.3d 654, the court limited recovery under a *Tameny* theory to discharges in violation of public policy "affect[ing] a duty which inures to the benefit of the public at large," rather than merely to the benefit of a particular employer or employee. (47 Cal.3d at p. 669.) The court emphasized that the public policy affected must be "fundamental," "substantial" and "well established" at the time of the discharge. (*Id.* at pp. 668-669; see also *Shoemaker III*, *supra*, 2 Cal.App.4th at p. 1418.) In *Gantt*, the Supreme Court, addressing a question left open in *Foley*, concluded that, *in wrongful discharge actions*, such public policy must be grounded in some statutory or constitutional provision. (*Gantt*, *supra*, 1 Cal.4th at p. 1095.)[13] Several recent decisions provide examples of the type of employer misconduct which will justify a separate civil (*Tameny*) action in tort.

[12]The Supreme Court explains this concept in *Shoemaker II*. "[T]he legal theory supporting [the] exclusive remedy provisions is a presumed 'compensation bargain,' pursuant to which the employer assumes liability for industrial personal injury or death without regard to fault in exchange for limitations on the amount of that liability. The employee is afforded relatively swift and certain payment of benefits to cure or relieve the effects of industrial injury without having to prove fault but, in exchange, gives up the wider range of damages potentially available in tort. [Citations.] The function of the exclusive remedy provisions is to give efficacy to the theoretical 'compensation bargain.' . . . [¶] . . . [However, such] provisions are not applicable under certain circumstances, sometimes variously identified as 'conduct where the employer or insurer stepped out of their proper roles' [citations], or 'conduct of an employer having a "questionable" relationship to the employment' [citations], *but which may be essentially defined as not stemming from a risk reasonably encompassed within the compensation bargain.* [Citations.]" (*Shoemaker II*, *supra*, at p. 16; italics added.)

[13]The *Gantt* court explained that a "public policy exception carefully tethered to fundamental policies that are delineated in constitutional or statutory provisions strikes the proper balance among the interests of employers, employees and the public. The employer is bound,

In *Shoemaker II, supra,* 52 Cal.3d 1, the Supreme Court held that the workers' compensation act does not preempt a tort action for wrongful termination in violation of Government Code section 19683, a "whistleblower" statute. (52 Cal.3d at p. 23.) The Supreme Court remanded *Shoemaker* to the Court of Appeal for resolution of the broader issue of whether workers' compensation preempts a *Tameny* cause of action for wrongful termination in violation of public policy generally. *(Ibid.)* Upon remand, the Court of Appeal held, first, that a *Tameny* claim is not preempted by workers' compensation *(Shoemaker III, supra,* 2 Cal.App.4th at p. 1419) and, secondly, that Shoemaker's claim for wrongful termination in retaliation for his exercise of the right to counsel under the Public Safety Officers Procedural Bill of Rights Act (Gov. Code, § 3300 et seq.) constituted such a claim. (2 Cal.App.4th at p. 1421.)

In *Rojo* v. *Kliger* (1990) 52 Cal.3d 65 [276 Cal.Rptr. 130, 801 P.2d 373], the Supreme Court held that an employee's right to pursue an action for wrongful discharge in violation of public policy is not limited to situations, where, as a condition of employment, the employer coerces the employee to commit an unlawful act or restrains an employee from exercising a fundamental right, privilege or obligation, *but exists whenever the basis of the discharge contravenes a fundamental public policy.* (52 Cal.3d at p. 91.) In particular, the court held that a common law *Tameny* action would lie for a wrongful discharge on the basis of gender, in violation of public policies articulated in the FEHA, and is cumulative of the statutory action available under the FEHA and may thus be brought without exhausting the administrative remedies that are otherwise required under that statutory scheme. *(Id.* at p. 88.)[14]

Here, the causes of action alleged in Bryson's action against B & E fall squarely within those categories of actions which have been held to

---

at a minimum, to know the fundamental public policies of the state and nation as expressed in their constitutions and statutes; so limited, the public policy exception presents no impediment to employers that operate within the bounds of law. Employees are protected against employer actions that contravene fundamental state policy. And society's interests are served through a more stable job market, in which its most important policies are safeguarded." *(Gantt, supra,* 1 Cal.4th at p. 1095.)

[14]A number of other examples can be cited. In *Blom* v. *N.G.K. Spark Plugs (U.S.A.), Inc.* (1992) 3 Cal.App. 4th 382 [4 Cal.Rptr.2d 139], the court found an action in tort would lie for wrongful termination in retaliation for the employee's refusal to obey the employer's order to "Americanize" its predominantly Japanese staff, in violation of the FEHA. (3 Cal.App.4th at p. 389.) In *Flait* v. *North American Watch Corp.* (1992) 3 Cal.App.4th 467 [4 Cal.Rptr.2d 522], the court held that an action for wrongful termination in retaliation for the employee's resistance to his supervisor's sexual harassment of a subordinate, in violation of the FEHA, was not preempted by workers' compensation. (3 Cal.App.4th at p. 480.) Finally, in *Gantt, supra,* 1 Cal.4th 1083, the Supreme Court agreed with the holding of the court in *Shoemaker III, supra,* that a *Tameny* action for wrongful discharge in violation of public policy is not preempted by workers' compensation. (1 Cal.4th at p. 1085.)

violate fundamental and substantial public policies delineated in important state statutes, and which are consequently excepted from the exclusive coverage provisions of workers' compensation. Her cause of action for violation of the FEHA clearly is excepted. (*Rojo* v. *Kliger*, *supra*, 52 Cal.3d at pp. 90-91.) In addition, her cause of action for wrongful termination is also excepted, as it constituted a *Tameny* action alleging wrongful discharge in retaliation for her refusal (1) to engage in antiunion activity violative of the NLRA and (2) to participate in discriminatory employment practices violative of the FEHA. (*Gantt*, *supra*, 1 Cal.4th at p. 1098; *Tameny*, *supra*, 27 Cal.3d at pp. 177-178; *Blom* v. *N.G.K. Spark Plugs (U.S.A.), Inc.*, *supra*, 3 Cal.App. 4th at pp. 388-389.)

### 3. *Impact of Section 533*

Because Bryson stated valid civil causes of action for injuries arising within the course and scope of her employment, State Fund had a duty, under the "employer's liability" portion of the policy, to defend if (1) there was a *potential* for coverage or (2) B & E had a *reasonable expectation* of coverage in light of the nature and kind of risks covered by the policy. (*Gray* v. *Zurich Insurance Co.* (1966) 65 Cal.2d 263, 274-275 [54 Cal.Rptr. 104, 419 P.2d 168].)

A potential for coverage would exist if, based on the allegations of Bryson's complaint, together with any other information available to State Fund,[15] there was a possibility of coverage under the policy's insuring language which was not excluded by any express provision within the policy or precluded by the statutory restraint of section 533. This is a question which is not judged on the basis of hindsight but, rather, from all of the information available to the insurer at the time of the tender of the defense. (*CNA Casualty of California* v. *Seaboard Surety Co.* (1986) 176 Cal.App.3d 598, 605, 610 [222 Cal.Rptr. 276].) Arguably, Bryson's pleadings alleged claims falling within the liability policy's insuring language (in that her claims arose out of her employment and were not covered by the workers' compensation portion of the policy) and, as we note below, the policy contained no express restrictive language applicable to those claims.[16] Thus, our examination of the coverage issue requires us to focus on the impact of section 533.

---

[15]As we have already noted, however, in this case there was no other such information (see fn. 9, *ante*). Counsel for B & E conceded to the trial court that the coverage issue could be decided *solely* on the allegations of Bryson's second amended complaint.

[16]Standard comprehensive general liability policies usually contain language which restricts coverage to bodily injury or property damage caused by an "occurrence" which, in turn, is usually defined as "an accident, including continuous or repeated exposure to conditions,

In making that analysis, however, we must not only consider whether Bryson's pleading alleged facts demonstrating a potential for coverage but also whether, under all of the circumstances, B & E could reasonably have expected a defense. "[S]ection 533 precludes only *indemnification* of wilful conduct and not the *defense* of an action in which such conduct is alleged. [Citation.] . . . ¶ [E]ven though public policy or section 533 precludes an insurer from indemnifying an insured in an underlying action the duty to defend still exists so long as the 'insured reasonably expect[s] the policy to cover the types of acts involved in the underlying suit[.]' [Citation.]" (*Republic Indemnity Co.* v. *Superior Court* (1990) 224 Cal.App.3d 492, 497 [273 Cal.Rptr. 331] (*Republic*).) Put another way, "if the reasonable expectations of an insured are that a defense will be provided for a claim, then the insurer cannot escape that obligation merely because public policy precludes it from indemnifying that claim." (*Ohio Casualty Ins. Co.* v. *Hubbard* (1984) 162 Cal.App.3d 939, 947 [208 Cal.Rptr. 806].)

In evaluating the impact of section 533 on this case, we discuss both of these issues.

### a. *There Was No Potential for Coverage*

Section 533 is " 'an implied exclusionary clause which by statute is to be read into all insurance policies.' " (*J.C. Penney Ins. Co.* v. *M.K., supra,* 52 Cal.3d at p. 1019 (*J.C. Penney*).) However, section 533 is not subject to the rules governing the interpretation of contracts, which require strict construction against the insurer. Rather, as a statute, it is subject to the rules of *statutory* construction. (*Id.* at p. 1020, fn. 9; *Fire Ins. Exchange* v. *Altieri* (1991) 235 Cal.App.3d 1352, 1357 [1 Cal.Rptr.2d 360].) In particular, and most significantly, it is subject to the rule that a statute must be construed to effect its purpose. (*White* v. *County of Sacramento* (1982) 31 Cal.3d 676, 681 [183 Cal.Rptr. 520, 646 P.2d 191]; *Moyer* v. *Workmen's Comp. Appeals Bd.* (1973) 10 Cal.3d 222, 230 [110 Cal.Rptr. 144, 514 P.2d 1224].)

The purpose of section 533 is to discourage willful torts. (*Tomerlin* v. *Canadian Indemnity Co.* (1964) 61 Cal.2d 638, 648 [39 Cal.Rptr. 731, 394

---

which results in bodily injury or property damage neither expected nor intended from the standpoint of the insured." In addition, such policies often contain language which explicitly *excludes* coverage for "bodily injury or property damage which is either expected or intended from the standpoint of the insured." As we have already noted, the liability policy before us is not such a policy (see fn. 8, *ante*) and contains neither of these provisions. However, given the issue before us, this makes no difference. "Section 533 reflects a fundamental public policy of denying coverage for willful wrongs. [Citation.] The parties to an insurance policy therefore cannot contract for such coverage. [Citation.]" (*J.C. Penney Casualty Ins. Co.* v. *M.K.* (1991) 52 Cal.3d 1009, 1019-1020, fn. 8 [278 Cal.Rptr. 64, 804 P.2d 689].)

P.2d 571].) Indeed, section 533 "reflects a *fundamental public policy* denying coverage for willful wrongs." (*J.C. Penney, supra,* 52 Cal.3d at pp. 1019-1020, fn. 8; italics added.) Not all "intentional" or "willful" acts within the meaning of traditional tort principles fall within the purview of the statute, however. In particular, a "wilful act" within the meaning of section 533 means " 'something more than the mere intentional doing of an act constituting [ordinary] negligence,' " and appears to be something more than the intentional violation of a statute. For example, intentionally driving an automobile in excess of the statutory maximum speed limit is not "wilful" within the meaning of section 533. (*Id.* at pp. 1020-1021; *Fire Ins. Exchange v. Abbott* (1988) 204 Cal.App.3d 1012, 1019 [251 Cal.Rptr. 620].) Nor has conduct in conscious disregard of the safety of others, for example, drunk driving, been found to be willful under section 533. (*J.C. Penney, supra,* 52 Cal.3d at p. 1021; *Peterson v. Superior Court* (1982) 31 Cal.3d 147, 159 [181 Cal.Rptr. 784, 642 P.2d 1305].)

In *Clemmer v. Hartford Insurance Co.* (1978) 22 Cal.3d 865 [151 Cal.Rptr. 285, 587 P.2d 1098], the Supreme Court seemed to endorse a rule which limited the nature of a "wilful act" that would come under the prohibition of section 533 to one committed with a "preconceived design to inflict injury." (22 Cal.3d at p. 887.) In subsequent appellate court opinions, it was held that for an act to be "wilful" within the meaning of section 533, it had to be undertaken not only with the general intent of committing the act, but with a *subjective intent* to harm, or with the *specific intent* to injure or harm. (*Republic, supra,* 224 Cal.App.3d at pp. 501-502 [wrongful termination which involved a potentially nonwillful failure to accommodate plaintiff-employee's medical condition, as required by the provisions of the FEHA]; *State Farm Fire & Casualty Co. v. Eddy, supra,* 218 Cal.App.3d at p. 969 [nonwillful transmission of herpes through voluntary sexual intercourse]; *Fire Ins. Exchange v. Abbott, supra,* 204 Cal.App.3d 1012, 1020 [child molestation; in such case, a specific intent to harm was found to be *presumed*]; *Allstate Ins. Co. v. Overton* (1984) 160 Cal.App.3d 843, 848-850 [206 Cal.Rptr. 823] [conviction for battery did not necessarily determine that insured had acted with intent to harm or with preconceived design to inflict injury].)

On the specific issue of whether section 533 prohibits insurance coverage for an employer's allegedly wrongful termination of an employee, the court in *Republic* concluded that indemnification would not be precluded, and the duty to defend would thus not be excused, unless the employee, in order to prevail on his cause of action, would be required to show both an intentional act by the employer and a *specific intent* to injure the employee. (224

Cal.App.3d at pp. 501-503.) ▮ Relying upon *Republic*, B & E contends that section 533 did not preclude coverage for Bryson's claims. For two reasons, we do not believe that *Republic* supports this argument.

First, the holding in that case followed from the court's conclusion that the complaint, for which a defense was sought, stated a potential cause of action for unreasonable, that is, negligent, conduct. (224 Cal.App.3d at p. 502.) The underlying action in *Republic* was a suit by one Louis Fisher, a former employee of Alpha Therapeutic Systems, Republic's insured, for wrongful termination based in part on the theory that Alpha had failed to make a reasonable accommodation for Fisher's medical condition of cancer, in violation of the FEHA. (*Id.* at pp. 495-496.) Although Fisher's complaint was couched in language alleging willful conduct by his employer (*id.* at pp. 500-501), the court concluded that Fisher could *potentially* recover from Alpha by simply proving that Alpha acted *unreasonably*, that is, negligently. (*Id.* at p. 502.) Because the potential existed for Fisher to prevail against Alpha on a cause of action for which Alpha's policy of insurance provided indemnification, and for which there was no express or implied exclusion, the insurer was obligated to defend the action. (*Id.* at p. 504.)

In the underlying action here, however, no such potential for recovery existed without proof of willful conduct. A termination affirmatively undertaken with the intent to interfere with protected labor union rights or discriminate on the basis of gender, age, or ethnic origin cannot be the result of negligence. An affirmative act which can only violate the law when it is accompanied by such an impermissible motivation *necessarily* involves willful and intentional misconduct.[17] Bryson's complaint clearly alleges such activity. She could not have prevailed in the underlying action by proving anything short of such affirmative and willful misconduct. Her cause of action was thus of a distinct character from that involved in *Republic*.

B & E also relies, however, on the broader reasoning of *Republic*. This exposes the second, and more fundamental, reason why *Republic* is of no help to B & E. The *Republic* court stated that section 533 would not exonerate the insurer of its duty to indemnify and defend the action simply because of the presence of allegations of willful conduct. Something more was required. *Republic* held that an insured's conduct is "wilful" within the

---

[17]For a similar analysis, applied in a case where the insured had been charged with and held liable for violations of the federal antitrust statutes, see *Trailer Marine Transport* v. *Chicago Ins. Co.* (N.D. Cal. 1992) 791 F. Supp. 809. As the court pointed out in *Gray* v. *Zurich Insurance Co., supra,* ". . . the obligation to defend does not mature . . . if the nature of the alleged intentional tort *compels* a finding of intentional wrongdoing . . . ." (65 Cal.2d at p. 276, fn. 15; italics added.)

meaning of section 533, thus precluding indemnification, only when there is also present " ' "*a preconceived design to inflict injury.*" ' " (224 Cal.App.3d at pp. 501-502.)

Citing opinions of the Supreme Court in *Clemmer* v. *Hartford Insurance Co., supra,* 22 Cal.3d 865 and *Peterson* v. *Superior Court, supra,* 31 Cal.3d 147, *Republic* concluded that for insurance coverage to be precluded by section 533, "the insured must subjectively intend to harm another in order for his or her conduct to be considered 'wilful.' " (224 Cal.App.3d at p. 501.) Based upon this reasoning, B & E contends State Fund could not escape its duty to defend the Bryson lawsuit, as it was not even alleged, let alone proven, that B & E *subjectively* intended to harm Bryson when it discharged her.

However, this argument has been undermined by at least two subsequent cases. Only a few weeks after *Republic* was decided, the Supreme Court, in *J.C. Penney, supra,* 52 Cal.3d 1009, clarified its decision in *Clemmer.* It held that section 533 precluded coverage for injuries resulting from acts of child molestation, despite the testimony of the molester, corroborated by psychiatric evidence, that he meant the child victim no harm. The court concluded that the very essence of child molestation is a harmful act, that is, it is always intentional, always wrongful, and always harmful. (52 Cal.3d at p. 1025.)

As child molestation is wrongful as a matter of law, the intent or motive of an insured in committing an act of sexual molestation was found to be irrelevant. The court held *intent and motive to be relevant only on the issue of whether the act was wrongful in the first instance, that is, where the act might be either justified or unjustified and wrongful, depending on the motive with which it was committed.* For example, a defendant's act of striking another might be justified if committed in self-defense, but would be unjustified and thus wrongful if done without provocation. (*J.C. Penney, supra,* 52 Cal.3d at pp. 1023-1024.)[18] Asserting that "[t]here is no motive that can justify child molestation," the court concluded that motive is therefore irrelevant where

---

[18]The court traced the phrase, "preconceived design to inflict injury" to its genesis in *Walters* v. *American Ins. Co.* (1960) 185 Cal.App.2d 776 [8 Cal.Rptr. 665], a case in which the insurer contended the act of the insured in battering a third party was precluded from coverage by section 533 because the act was intentional. The *Walters* court rejected that contention because the insured might have struck the victim in self-defense, in which case, "although he 'intended the act,' [he] acted by chance and *without a preconceived design to inflict injury.*" (185 Cal.App.2d at p. 783; italics added.) In such case, the insured would also have acted without that "element of wrongfulness or misconduct" that invokes the prohibition of section 533. (*Ibid.*)

indemnification is sought for such an act. (*Id.* at p. 1027.) "Properly understood, *Clemmer* . . . does not require a showing by the insurer of its insured's 'preconceived design to inflict harm' when the insured seeks coverage for an intentional and wrongful act if the harm is inherent in the act itself." (*J.C. Penney, supra,* 52 Cal.3d at p. 1025.)

However, *J.C. Penney* appeared to limit its holding, and the explication of the phrase "preconceived design to inflict injury," to acts of sexual molestation involving children. Indeed, the court emphasized that its holding was extremely narrow and that it did not address the issue of whether other types of wrongdoing might also be excluded from coverage by section 533. (52 Cal.3d at p. 1028.) Nevertheless, it did not take long for another court to apply *J.C. Penney* in an entirely different factual context.

*Fire Insurance Exchange* v. *Altieri, supra,* 235 Cal.App.3d 1352 (*Altieri*) involved an insurer which contended that section 533 precluded indemnification of its insured, Altieri, for injuries inflicted by Altieri's son on a high school classmate when, without provocation, the insured's son struck the other boy in the mouth. *Altieri* reasoned that it was irrelevant to the issue of coverage that young Altieri did not intend to hurt his victim. The determinative circumstance was that he did intend, without any legal justification, to hit him. That act, the court concluded, was wrongful and inherently harmful and was thus an uninsurable willful act under section 533 despite the actor's lack of a "preconceived design to harm." (*Id.* at pp. 1359-1360.) "The 'preconceived design to inflict harm' requirement, the court explained, *is relevant only to the issue of whether the insured intended to commit a wrongful act. Thus, it does not apply 'when the insured seeks coverage for an intentional and wrongful act if the harm is inherent in the act itself.'* [Citation.] The emphasis is on the wrongfulness of the act committed by the insured, not on the insured's subjective expectation of injury." (*Altieri, supra,* 235 Cal.App.3d at p. 1358; italics added.)[19]

We hold that the reasoning of *J.C. Penney* and *Altieri* must also apply to the employer who commits a wrongful employment termination in contravention of a fundamental and substantial public policy, that is, a so-called

---

[19]Without referring to *J.C. Penney,* another appellate court opinion, filed shortly after *J.C. Penney,* appeared to move away from the "preconceived design to inflict injury" test for the application of section 533. In *Studley* v. *Benicia Unified Sch. Dist.* (1991) 230 Cal.App.3d 454 [281 Cal.Rptr. 631], the court held that section 533 prohibited indemnification for the act of the insured's son, Leonard R., in shooting Heather D. in conscious disregard of the danger that the chamber of the gun with which he intended only to frighten Heather was loaded—an act for which Leonard was convicted of second degree murder. (230 Cal.App.3d at pp. 457-459.) The court found no significant distinction between implied malice within the meaning of Penal Code section 188 and an actual intent, or "a preconceived design," to kill. (230 Cal.App.3d at p. 459.)

*Tameny* termination, including a termination in violation of the FEHA. Under *J.C. Penney* and *Altieri*, section 533 precludes indemnification by insurance for any "intentional and wrongful act if the harm is inherent in the act itself." A termination of employment for which a tort action will lie under *Tameny* and its progeny is such an act.

It is well established and generally self-evident that the act of terminating an employee is an intentional act. (*Dyer* v. *Northbrook Property & Casualty Ins. Co.* (1989) 210 Cal.App.3d 1540, 1547 [259 Cal.Rptr. 298].) Indeed, a substantial line of authority exists which holds that, as a matter of law, there is no coverage for injuries arising from wrongful termination under policies expressly limiting coverage to "accidents" or "occurrences" which are defined as " 'accident[s] . . . neither expected nor intended from the standpoint of the insured,' " because the termination of an employee is not an "accident." (*Loyola Marymount University* v. *Hartford Accident & Indemnity Co.* (1990) 219 Cal.App.3d 1217, 1224-1225 [271 Cal.Rptr. 528]; *Dyer* v. *Northbrook Property & Casualty Ins. Co., supra,* 210 Cal.App.3d at pp. 1546-1549; *Commercial Union Ins. Co.* v. *Superior Court* (1987) 196 Cal.App.3d 1205, 1208-1209 [242 Cal.Rptr. 454]; *American Guar. & Liability* v. *Vista Medical Supply* (N.D. Cal. 1988) 699 F.Supp. 787, 791-792.)[20]

Next, it can hardly be denied that a termination from employment in violation of antidiscrimination statutes or other fundamental and substantial public policies is inherently harmful. It does not require extensive discussion to demonstrate the devastating impact of the loss of a job, whether from a financial, psychological or emotional point of view. When that occurs in the context of an employer's discrimination against an employee's sex, age, race or national origin or in an effort to defeat nationally established rights to bargain collectively, it is devastating not only to the employee but to the body politic as well.

The final question is, were the acts alleged by Bryson wrongful in the sense that term is used in *J.C. Penney* and *Altieri?* A termination in violation of fundamental public policy has been found to be "ex delictu" and thus enforceable by a tort action, because the action redresses "a discharge [that] clearly violated an express statutory objective or undermined a firmly established principle of public policy." (*Tameny, supra,* 27 Cal.3d at p. 172, 176.) Such a civil action is authorized, because it serves "substantial" public policies and enforces duties which inure "to the benefit of the public at large

---

[20]These cases, of course, were not decided under section 533, but involve the construction and application of express policy language which either restrictively defined the limits of coverage or provided exclusions to coverage for the insured's intentional acts.

rather than to a particular employer or employee." (*Foley* v. *Interactive Data Corp.*, *supra*, 47 Cal.3d at p. 669.) A civil action under *Tameny* serves "firmly established," "fundamental," and "substantial" public policies that are "embodied in the state Constitution." (*Rojo* v. *Kliger*, *supra*, 52 Cal.3d at p. 90; *Gantt*, *supra*, 1 Cal.4th at p. 1095.)

Under any reasonable criterion, a termination in violation of such public policies must be held *wrongful as a matter of law.* As we have pointed out, such claim can *only* be established by evidence of an employer's motive and intent to violate or frustrate the law(s) declaring or establishing fundamental public policy. It would be unreasonable, mischievous and improper if section 533, which reflects the "fundamental public policy of denying coverage for willful wrongs" (*J.C. Penney*, *supra*, 52 Cal.3d at pp. 1019-1020, fn. 8), were construed in any way other than to deny insurance coverage in the most certain and unambiguous terms for willful and intentional acts that contravene "fundamental policies that are delineated in constitutional or statutory provisions" (*Gantt*, *supra*, 1 Cal.4th at p. 1095).

### b. *B & E Could Have No Reasonable Expectation of a Defense*

In those cases where insurance coverage is precluded by section 533, an insurer's duty to defend must also be measured by the reasonable expectations of the insured in light of the nature and kind of risks covered by the policy. (*Gray* v. *Zurich Insurance Co.*, *supra*, 65 Cal.2d at p. 274.) For example, an automobile liability insurance policyholder could "reasonably expect" his insurer to defend any suit arising out of his driving the car, but could not "reasonably expect" defense of an action for injuries occurring from a defect in a stairway. (*Ibid.*)

The *Republic* court did not reach the question of whether the insured could reasonably have expected a defense, as it was able to decide the case based on the presence of a *potential* for coverage which was demonstrated by the nature of the third party's claims. As is apparent from our earlier discussion, we do not have that option here. ▉▉▉▉ We must determine, under the facts before us, and the terms of State Fund's liability policy, whether B & E could have any reasonable expectation that a defense would be provided to Bryson's action even though section 533 precluded any insurance coverage. This is an issue which we resolve as a question of law. (*Aim Insurance Co.* v. *Culcasi* (1991) 229 Cal.App.3d 209, 218 [280 Cal.Rptr. 766]; *Dyer* v. *Northbrook Property & Casualty Ins. Co.*, *supra*, 210 Cal.App.3d at p. 1549.)

▉▉▉▉ If the coverage provisions in any policy of insurance are unclear or the exclusions are ambiguous, so that a reasonable purchaser of the policy

would not realize that the risk is excluded and thus would reasonably expect the insurer to furnish a defense, a defense is required. (*Ohio Casualty Ins. Co.* v. *Hubbard, supra,* 162 Cal.App.3d at p. 947; also see *CNA Casualty of California* v. *Seaboard Surety Co., supra,* 176 Cal.App.3d at p. 614 [exclusionary provision was held "ambiguous on its face" because an expansive interpretation would exclude coverage for virtually any claim].) But an insured cannot "reasonably" expect a defense on claims based on conduct or risks clearly not covered or conspicuously excluded from coverage under the policy: "[T]he duty to defend a suit which raises a *possibility* of liability, but is eventually shown to be groundless, does not equate with a duty to defend a suit which raises *no* potential liability." (*Nichols* v. *Great American Ins. Companies* (1985) 169 Cal.App.3d 766, 776-777 [215 Cal.Rptr. 416]; see also *St. Paul Fire & Marine Ins. Co.* v. *Superior Court* (1984) 161 Cal.App.3d 1199, 1202 [208 Cal.Rptr. 5].)

The cases are uniform in holding that where the policy language clearly provides no basis for coverage, there is no duty to defend. In such circumstances, there can be no reasonable expectation of a defense. (See *Fire Ins. Exchange* v. *Abbott, supra,* 204 Cal.App.3d at p. 1029 [applying § 533 to a sexual molestation case and rejecting a duty to provide a defense]; *Commercial Union Ins. Co.* v. *Superior Court, supra,* 196 Cal.App.3d at pp. 1208-1209 [a termination of employment was intentional and not within the coverage provisions of the policy and so no duty to defend]; *Nichols* v. *Great American Ins. Companies, supra,* 169 Cal.App.3d at p. 777 [no duty to defend a claim that is not of a kind or nature covered by the policy]; *St. Paul Fire & Marine Ins. Co.* v. *Superior Court, supra,* 161 Cal.App.3d at pp. 1202-1203 [no potential for coverage for wrongful termination and so no duty to provide defense]; *Fresno Economy Import Used Cars, Inc.* v. *United States Fid. & Guar. Co.* (1977) 76 Cal.App.3d 272, 284-285 [142 Cal.Rptr. 681] [holding there was no duty to defend a claim which did not come within coverage provisions of policy].)

 In this case, of course, the rejection of the coverage obligation does not depend upon express policy language. The coverage preclusion here is a statutory one imported into the policy as a matter of law. The question is, does that make any difference? We have been presented with and can divine no reason why it should. Section 533, as an implied term of the State Fund liability policy, is as much a part of the insurance contract as any express exclusion. (*J.C. Penney, supra,* 52 Cal.3d at p. 1019.) What then could create a reasonable defense expectation in spite of an insurance coverage preclusion based on section 533?

As we have already noted, section 533 "precludes only *indemnification* of willful conduct and not the *defense* of an action in which such conduct is

alleged. [Citation.]" (*Republic*, *supra*, 224 Cal.App.3d at p. 497; see also, *Ohio Casualty Ins. Co.* v. *Hubbard*, *supra*, 162 Cal.App.3d at p. 944.) However, we read this statement of principle to mean only that an insurer and an insured are free to contract for the provision of a defense to a claim which can not be indemnified. That is, if an insured either expressly purchases a defense without regard to indemnification (e.g., a litigation policy) or is led by the terms of the insurance agreement, whether those terms be clear or ambiguous, to reasonably expect a defense to the type of claim asserted, then a defense may be required even though there can legally be no duty to indemnify because of section 533. Thus, in this case the existence of a continuing duty to defend could only be based upon some construction of the terms of the State Fund policy which would create that duty. Given that we are here considering the scope of the policy's insuring clauses rather than any exclusionary provision, it is B & E's burden to demonstrate that the policy language is reasonably capable of such a construction. (*Dyer* v. *Northbrook Property & Casualty Ins. Co.*, *supra*, 210 Cal.App.3d at p. 1547.) In our view, B & E has not satisfied that burden.

The policy expressly promised a defense of "claims or suits" asserted against B & E "on account of bodily injuries sustained by employees covered by this policy, . . . arising out of and in the course of their employment."[21] In addition, it provided that State Fund "*may* defend" claims or suits against B & E based on willful and serious misconduct.

Certainly, the express promise to defend embraced claims which, by their nature, are not covered under the workers' compensation portion of the policy. In that limited sense, those asserted here are the type of claims to which the "gap-filler" liability coverage might extend if not precluded by section 533. However, given the intentional and willful misconduct necessarily required in order to establish the wrongful termination and discrimination claims asserted in this case, can we conclude, based solely on such policy language, that an insured, engaging in such behavior, has any reasonable expectation that his insurer will nonetheless defend him? We think not.[22]

We can conceive of no rational construction of the policy which would permit the conclusion that such employer misconduct could reasonably be

---

[21]Arguably, there would be no indemnity coverage or reasonable expectation of a defense where, as here, the only "bodily injury" alleged is emotional distress without any claim of *physical* injury or disability. (See *Aim Insurance Co.* v. *Calcasi*, *supra*, 229 Cal.App.3d at pp. 218-226.) However, this is not an objection which was raised or asserted by State Fund either here or in the trial court.

[22]Certainly, B & E is not permitted to claim that it was unaware that its intentional and willful acts violated fundamental public policy. As the Supreme Court emphasized in *Gantt*, "The employer is bound, at a minimum, to know the fundamental public policies of the state

included among those claims for which a defense would be provided. The policy does address the provision of a defense for *"serious and willful"* claims, as to which indemnity is statutorily prohibited (Ins. Code, § 11661), and expressly states that such a defense would be *optional* with State Fund. Clearly, no duty to defend can be read into such a policy provision. To the contrary, it negates any affirmative duty to defend and undercuts any reasonable expectation of a defense by B & E. (See *Gribaldo, Jacobs, Jones & Associates* v. *Agrippina Versicherunges, A.G.* (1970) 3 Cal.3d 434, 448 [91 Cal.Rptr. 6, 476 P.2d 406].) It simply gives State Fund a choice as to whether a defense would be provided with respect to any asserted claims for which no indemnification was available. Given that conclusion, it would be anomalous indeed for us to hold that the claims asserted here by Bryson, for which indemnity is precluded by section 553, could nonetheless be reasonably embraced by the policy's general promise to defend.

Thus, the State Fund policy, read as a whole, cannot provide a basis for a *reasonable expectation* of a defense under the facts presented here. A line must be drawn. ■ " 'The obligation to defend is predicated upon liability for a loss covered by the policy.' [Citation.]" (*State Farm Fire & Casualty Co.* v. *Drasin* (1984) 152 Cal.App.3d 864, 868 [199 Cal.Rptr. 749] [rejecting a duty to defend where the insurer could not be liable under the policy]; italics omitted.) ■ That we find no duty to defend here as the result of a statutory preclusion, rather than express policy language, makes no difference.

## CONCLUSION

Indemnification by insurance for the conduct alleged by Bryson is precluded by section 533. Any other conclusion would undermine not only the strong policy behind section 533, but also the substantial and firmly established policies embodied in the statutes that were alleged to have been violated. Therefore, the trial court correctly found that because Bryson's complaint alleged only intentional and willful misconduct, indemnification was precluded. As there was never any potential for coverage and no provision in the policy which could nonetheless create a reasonable expectation of a defense, we conclude that State Fund had no duty to provide one.

---

and nation as expressed in their constitutions and statutes; . . ." (*Gantt, supra*, 1 Cal.4th at p. 1095.) Thus, B & E is charged with the knowledge that the misconduct alleged by its former employee violated important and fundamental public policies embraced in both state and federal law.

## DISPOSITION

The judgment is affirmed. State Fund shall recover its costs on appeal.

Klein, P. J., and Hinz, J., concurred.