MARKEL AMERICAN INSURANCE COMPANY, a Corporation, Plaintiff,

v.

G.L. ANDERSON INSURANCE SERVICES, INC., a California Corporation; Gary L. Anderson, an individual, Defendants.

No. 2:08–cv–2769 FCD GGH.

United States District Court, E.D. California.

May 25, 2010.

---

Andrew J. Waxler, Gretchen S. Carner, Waxler Carner Brodsky, LLP, El Segundo, CA, for Plaintiff.

Theodore Dickson Bolling, Jr., Bolling & Gawthrop, Sacramento, CA, for Defendants.

## MEMORANDUM AND ORDER

FRANK C. DAMRELL, JR., District Judge.

This matter is before the court on defendants G.L. Anderson Insurance Services, Inc. ("GLAIS") and Gary L. Anderson's ("Anderson") (collectively, "defendants") motion for summary judgment and plaintiff Markel American Insurance Company's ("Markel") cross-motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. For the reasons set forth below,[1] defendants' motion for summary judgment is DENIED, and plaintiff's motion for summary judgment is GRANTED in part and DENIED in part.

## BACKGROUND [2]

This case arises out of an insurance coverage dispute between plaintiff and de-

---

1. Because oral argument will not be of material assistance, the court orders the matter submitted on the briefs. E.D. Cal. L.R. 230(g).

2. Unless otherwise noted, the facts herein are undisputed. (See Pl.'s Reply to Defs.' Response to Pl.'s Statement of Undisputed Facts ("PUF") [Docket # 22], filed Apr. 16, 2010; Pl.'s Response to Defs.' Statement of Disputed Facts ("PDF") [Docket # 22], filed Apr. 16, 2010; Defs.' Response to Pl.'s Separate Statement of Undisputed Facts ("DPUF") [Docket # 25–2], filed Apr. 16, 2010.)

The parties assert that certain facts are disputed where the cited underlying evidence does not demonstrate a triable issue of fact. The court has reviewed the underlying evidence and notes if the fact is indeed disputed.

The parties also filed numerous objections and a motion to strike evidence. The court

fendants. Markel issued an Employment Practices Liability Insurance Policy (the "Policy") to GLAIS, effective December 30, 2007 to December 30, 2008, with limits of liability of $500,000 for each claim and $1,000,000 in the aggregate. (PUF ¶ 1.) The Policy provides, in pertinent part, that Markel "will pay on behalf of the Insured all Damages which the Insured shall become legally obligated to pay as a result of Claims ... by reason of any Wrongful Employment Practice." (PUF ¶ 3.) However, pursuant to Exclusion 1, the Policy does not apply to any claim against the Insured based on conduct "that is committed with wanton, willful, reckless, or intentional disregard of any law or laws" that form the basis of the claim. (PUF ¶ 6.) Both GLAIS and Anderson are Insureds under the Policy. (PUF ¶¶ 7–8.)

On January 25, 2008, Tiffany Cole ("Cole") filed an action against defendants in the Sacramento Superior Court. (PUF ¶ 9.) The complaint alleged causes of action for sexual harassment and discrimination in violation of the Fair Employment and Housing Act ("FEHA"), California Government Code § 12940 et seq., retaliation, violation of public policy, and defamation-libel and slander per se. (PUF ¶ 11.) GLAIS hired Cole on December 27, 2004, as a Marketing/Customer Service Representative. (PDF ¶ 1.) Cole alleged that during the later part of 2006, Anderson began sexually harassing and discriminating against her by referring to her as a "bitch" and by asking her questions relating to her menstrual cycle. (PUF ¶ 12.) She also alleged that in 2007, Anderson repeatedly called her a "whore" and a "bitch" and sent email communications in which he referred to her as such. (PUF ¶¶ 13–14.) She alleged that she asked Anderson to stop making the sexually de-

meaning and offensive comments and that, in February 2007, she threatened to quit because of the way she was treated by Anderson. (PUF ¶¶ 15–16.) Cole asserted that in response to her threat to quit, Anderson agreed to allow her to work part-time on a telecommute schedule and come into the office one to two days per week. (PUF ¶ 17.) Cole further alleged that Anderson's conduct continued, even after she again asked him to stop in October 2007. (PUF ¶ 19.) She asserted that after she complained, Anderson sent out defamatory emails to clients calling her "so God damned lazy, she can't get her cheesy, fat fucking ass in the car and drive to work." (PUF ¶ 20.) Finally, Cole alleged that Anderson retaliated against her complaints of sexual harassment by firing her effective January 2008. (PUF ¶ 22.)

Anderson, current employees of GLAIS, and a former employee confirmed that profanity was regularly used in the office by Gary, Cole, and other employees. (PUF ¶¶ 28, 38.) Anderson admitted calling Cole a "bitch" and a "whore," but asserted it was in the context of a joke after Cole had used those terms in referring to herself. (PUF ¶ 41; PDF ¶ 38–39.) Anderson also admitted that sexual slurs and jokes and racial or ethnic slurs and jokes were occasionally told at the office. (PUF ¶ 43.) However, no one was aware of any complaints by Cole about sexual harassment. (Ex. 6 to Decl. of Clara Celebuski ("Celebuski Decl."), filed Mar. 3, 2010, at 5.) When interviewed, Anderson and the employees commented that plaintiff herself made sexually explicit comments, sent emails that had sexual innuendos and sexual jokes, and made sexual gestures in public when other employees were present. (*Id.* at 4–5; PDF ¶¶ 36–37, 51.)

has reviewed the filings and concludes that the evidence objected to is either irrelevant to the court's determination or the objections

are otherwise without merit. Accordingly, the objections are OVERRULED and the motion to strike is DENIED.

Anderson believed that all employees were comfortable in the uninhibited environment at GLAIS because they appeared to enjoy the bantering that included profanity and sexual comments. (PDF ¶ 47.)

Anderson also admits sending the email to Dan Carroll ("Carroll"), a friend of Anderson's, that referred to Cole, but presents evidence that Carroll did not know to whom Anderson was referring. (PUF ¶ 59; PDF ¶ 27.) The email did not mention Cole's name, and she was not the only employee that worked from home. (PDF ¶ 19.)

Defendants contend that Cole's employment was terminated on January 11, 2008 on the basis of insubordination. Specifically, they assert that she was terminated due to an email she sent to all GLAIS employees stating that she would not comply with new compensation procedures that GLAIS had implemented in January 2008. (PUF ¶ 47; PDF ¶¶ 30–31.)

After Cole's complaint was filed, by letter dated January 29, 2008, Markel wrote a letter to Anderson acknowledging receipt of the claim; the letter provided, "This letter does not address applicability of coverage, which will be addressed in future correspondence." (PUF ¶ 25; Ex. 3 to Decl. of Clara Celebuski ("Celbuski Decl."), filed Mar. 3, 2010.) By letter dated January 31, 2008, Markel appointed Robert J. Schnack ("Schnack") of Jackson Lewis LLP to defend the named defendants in the Cole litigation. (PUF ¶ 24.)

On February 25, 2008, Cole made a settlement demand for the policy limit of $500,000, less attorneys' fees and costs incurred, which expired on April 4, 2008. (PUF ¶ 26.) That same day, Schnack filed defendants' answer to Cole's complaint, which denied all of the allegations and asserted 18 affirmative defenses. (PDF ¶ 50.)

On February 26, 2008, Markel and Anderson received Schnack's initial report relating to the liability faced by defendants in the Cole litigation. (PUF ¶ 27; DPUF ¶ 13.) Schnack acknowledged that there were defenses to Cole's claim, but recommended settlement. (PDF ¶ 55.) Schnack's preliminary evaluation was "that this case presents some significant liability exposure as to both compensatory and punitive damages." (DPUF ¶ 15; Ex. 6 to Celebuski Decl. at 8.) Specifically, the report noted that "regardless of plaintiff's own conduct and comments, the jury could easily believe that in 2006 and 2007 such conduct and comments simply should not occur in the workplace." (Ex. 6 to Celbuski Decl. at 8.) Schnack reiterated his conclusions that defendants faced significant exposure beyond the policy limits in an email to Anderson sent on April 9, 2009. (PUF ¶¶ 48–49.)

On March 26, 2008, Markel's coverage counsel, Andrew Waxler ("Waxler"), sent a letter to Anderson regarding coverage related to the Cole litigation. (PUF ¶ 31; PDF ¶ 56.) The letter provided that "[b]ased upon the information received by Markel thus far, Markel wishes to advise that it will defend [Anderson] and GLAIS ... under a reservation of Markel's right to disclaim coverage." (Ex. 7 to Celebuski Decl. at 1.) The letter confirmed that the policy limit for the claim was $500,000. (Id.) The letter also provided that Exclusion 1 to the Policy may disallow coverage based upon willful conduct and that Insurance Code § 533 also prohibits indemnification for willful conduct and any punitive damage award. (Id. at 5–6.) The letter advised that Markel reserved the right to seek reimbursement of the Claim Expenses incurred in the litigation on behalf of the insureds if the litigation was not covered under the Policy. (Id. at 6.) The letter also advised that, although Waxler encouraged allowing Schnack to continue to act as counsel in the litigation, Anderson and GLAIS were entitled to independent

counsel under California Civil Code § 2860. (*Id.*) Anderson received and reviewed the letter on March 27, 2008. (PUF ¶ 36.)

Schnack obtained an agreement from Cole's counsel to extend the deadline for the policy limits demand from April 4, 2008, to April 11, 2008. (PUF ¶ 59.) On April 9, 2008, Anderson informed Schnack that he had an appointment with Kim Collins ("Collins") of Murphy, Campbell, Guthrie & Alliston on April 10. (PUF ¶ 51.) The settlement deadline was extended until April 14, 2008. (PUF ¶ 51; PDF ¶ 65.)

On April 10, 2008, Anderson retained Collins as independent counsel. (PUF ¶ 37.) That same day, Waxler received a letter from Collins, demanding that the policy limits settlement be accepted. (PUF ¶ 53.) The letter also noted that Waxler had "plac[ed] pressure" on Anderson to agree to pay money of his own to satisfy the demand and that he had warned Anderson of the possibility of non-covered damages since approximately April 3, 2008, "with several follow ups." (Ex. 16 to Decl. of Andrew J. Waxler ("Waxler Decl."), filed Apr. 8, 2010, at 3.)

Waxler attempted to reach Collins at least three times on Friday, April 11, 2008 to discuss whether defendants would contribute any money to a settlement of the Cole litigation. (Waxler Decl. ¶ 9.) Waxler left messages for Collins, providing a cell phone number and inviting him to call over the weekend to discuss these issues prior to expiration of the policy limits demand on Monday, April 14, 2008 at noon. (*Id.*) Collins never called Waxler. (*Id.*)

On April 14, 2008, Waxler called Collins and asked if defendants would contribute to the settlement. (PUF ¶ 55; DPUF ¶ 30.) Collins replied that defendants would not pay anything, but reiterated defendants' demand that the case be settled. (PUF ¶ 56; DPUF ¶¶ 31–32.) By letter

dated and faxed April 14, 2008, Waxler advised Collins that Markel had authorized acceptance of the policy limits demand to settle the Cole litigation under a reservation of the right to seek reimbursement of all sums paid. (PUF ¶ 57; DPUF ¶ 33.)

Schnack accepted Cole's offer to settle the litigation for the Policy limit less attorney's fees and costs before noon on April 14, 2008. (PDF ¶ 69.) Markel paid the agreed upon amount to Cole without an allocation to any of the four claims alleged in the Cole litigation. (PDF ¶ 69; DPUF ¶ 34.)

On November, 2008, plaintiff Markel filed its Complaint, alleging claims for (1) declaratory relief regarding the duty to indemnify, and (2) recoupment and/or reimbursement.

## STANDARD

The Federal Rules of Civil Procedure provide for summary judgment where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *see California v. Campbell*, 138 F.3d 772, 780 (9th Cir.1998). The evidence must be viewed in the light most favorable to the nonmoving party. *See Lopez v. Smith*, 203 F.3d 1122, 1131 (9th Cir.2000) (en banc).

The moving party bears the initial burden of demonstrating the absence of a genuine issue of fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). If the moving party fails to meet this burden, "the nonmoving party has no obligation to produce anything, even if the nonmoving party would have the ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102–03 (9th Cir.2000). However, if the nonmoving

party has the burden of proof at trial, the moving party only needs to show "that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp.*, 477 U.S. at 325, 106 S.Ct. 2548.

Once the moving party has met its burden of proof, the nonmoving party must produce evidence on which a reasonable trier of fact could find in its favor viewing the record as a whole in light of the evidentiary burden the law places on that party. *See Triton Energy Corp. v. Square D Co.*, 68 F.3d 1216, 1221 (9th Cir.1995). The nonmoving party cannot simply rest on its allegations without any significant probative evidence tending to support the complaint. *See Nissan Fire & Marine*, 210 F.3d at 1107. Instead, through admissible evidence the nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e).

## ANALYSIS

### A. Defendants' Motion for Summary Judgment

Defendants move for summary judgment on the grounds that plaintiff failed to timely notify them of a reservation of rights under the policy.[3] Specifically, defendants contend that (1) Markel failed to timely and expressly notify the defendants that Markel was reserving its rights under the insurance agreement; (2) Markel failed to notify defendants of its intention to accept the settlement offer before the morning it accepted the offer; and, (3) Markel never informed defendants that they had a right to assume their own defense.

■ "An insurer has the right and broad duty to defend the insured against third party claims potentially within the policy's coverage." *Blue Ridge Ins. Co. v. Jacobsen*, 25 Cal.4th 489, 497, 106 Cal. Rptr.2d 535, 22 P.3d 313 (2001). However, agreeing to defend the insured does not obligate the insurer to pay any judgments or settlements which arise out of conduct which is not covered by the insurance policy. An insurer may agree to defend a suit subject to a reservation of rights. *Truck Ins. Exchange v. Super. Ct.*, 51 Cal. App.4th 985, 994, 59 Cal.Rptr.2d 529 (1996). This permits an insurer to meet "its obligation to furnish a defense without waiving its right to assert coverage defenses against the insured at a later time." *Jacobsen*, 25 Cal.4th at 497, 106 Cal. Rptr.2d 535, 22 P.3d 313 (citations omitted); *see also Gray v. Zurich Insurance Co.*, 65 Cal.2d 263, 279, 54 Cal.Rptr. 104, 419 P.2d 168 (1966).

■ In order for an insurer to seek reimbursement from an insured for non-covered claims included in a reasonable settlement payment, the insurer must satisfy three prerequisites. *Jacobsen*, 25 Cal.4th at 502, 106 Cal.Rptr.2d 535, 22 P.3d 313. These prerequisites include: "(1) a timely and express reservation of rights; (2) an express notification to the insureds of the insurer's intent to accept a proposed settlement offer; and (3) an express offer to the insureds that they may assume their own defense when the insurer and insureds disagree whether to accept the proposed settlement." *Id.*

■ Courts interpreting California law have held that an insurer who waited as long as two years before explicitly reserving its rights under the insurance agreement did not waive its right to recovery for claims not covered under the policy. *See Ringler Associates Inc. v. Maryland*

---

**3.** The parties agree that California law should apply in determining the merits of this dispute.

*Cas. Co.*, 80 Cal.App.4th 1165, 1189, 96 Cal.Rptr.2d 136 (2000) ("it is insufficient for Ringler to rely on the fact respondents participated in its defense for approximately two years before formally reserving their rights to assert defenses to coverage"); *see also American Motorists Ins. Co. v. Allied–Sysco Food Services, Inc.*, 19 Cal.App.4th 1342, 1350, 24 Cal. Rptr.2d 106 (1993), *overruled on other grounds by Buss v. Superior Ct.*, 16 Cal.4th 35, 50, 65 Cal.Rptr.2d 366, 939 P.2d 766 (1997) (insurer did not waive coverage defense despite nine-month delay in sending reservation-of-rights letter after acceptance of defense); *National Union Fire Ins. Co. v. Siliconix Inc.*, 726 F.Supp. 264, 270 (N.D.Cal.1989) (insurer did not waive coverage defense despite fifteen-month delay in reserving its rights after accepting tender of defense). However, a reservation of rights made "on the eve of trial" may preclude an insurer from obtaining reimbursement from the insured. *Golden Eagle Ins. Co. v. Foremost Ins. Co.*, 20 Cal.App.4th 1372, 1393, 25 Cal.Rptr.2d 242 (1993).

■ Defendants have not shown that Markel failed to timely and expressly notify them that Markel was reserving its rights under the insurance agreement.[4] *See Jacobsen*, 25 Cal.4th at 502, 106 Cal. Rptr.2d 535, 22 P.3d 313. Four days after the Cole complaint was filed, Markel's first communication with defendants, the January 29, 2008 letter, unequivocally provided, "This letter does not address applicability of coverage, which will be addressed in future correspondence," and noted, "Nothing in this letter shall be construed as a waiver of any of the rights which [Markel] may have under this policy." (Celbuski Decl., Ex. 3.) As such, defendants cannot meet their burden of showing that Markel initiated an unconditional defense on behalf of defendants. Moreover, assuming *arguendo*, that defendants were not explicitly informed of the reservation of rights until they received Markel's March 26, 2008 letter, sixty-one days after the filing of the complaint, that explicit reservation of rights is timely. *See Ringler Associates Inc.*, 80 Cal.App.4th at 1189, 96 Cal. Rptr.2d 136 (two years); *Am. Motorists Ins. Co.*, 19 Cal.App.4th at 1350, 24 Cal. Rptr.2d 106 (nine months); *Nat'l Union Fire Ins. Co.*, 726 F.Supp. at 270 (15 months).

Defendants' contention that the reservation of rights was made "on the eve of" settlement because the March 26, 2008 letter was sent nine days before the initial deadline for accepting the settlement and eighteen days before the final deadline is unpersuasive. As an initial matter, defendants fail to cite any authority to support their contention that a settlement offer deadline is parallel to the initiation of a trial. Further, plaintiff gave defendants a general reservation of rights within four days of the filing of the complaint and an express reservation of rights approximately two months after the litigation was filed. While Cole's settlement demands created an expedited timeline for defendants to respond, there is no evidence that plaintiff failed to consistently apprise defendants of the potential for noncoverage. Indeed, in his letter to Waxler, Collins noted that

---

4. Defendants argue that Markel is precluded from obtaining reimbursement from them because Markel's "unconditional defense" of an action brought against its insured, with knowledge of the ground for denial of coverage "constitutes a waiver of the terms of the policy and an estoppel of the insurer to assert such grounds." *Stonewall Ins. Co. v. City of Palos Verdes Estates*, 46 Cal.App.4th 1810, 1838–39, 54 Cal.Rptr.2d 176 (1996) (internal quotation marks omitted). However, as evidenced by both the January 29, 2008 letter and the March 26, 2008 letter, Markel never agreed to an "unconditional defense" that estopped it from later seeking reimbursement from defendants.

Waxler had warned Anderson of the possibility of non-covered damages since approximately April 3, 2008, "with several follow ups." Moreover, Schnack obtained two extensions of Cole's settlement offer deadline after plaintiff's express reservation of rights and defendants' decision to seek representation by independent counsel. As such, under the circumstances in this case, defendants have not demonstrated that plaintiff's reservation of rights were not made until the "eve of trial."

Furthermore, the evidence is undisputed that plaintiff expressly advised defendants of their right to independent counsel in the March 26, 2008 letter, and that defendants indeed retained independent counsel, Collins. The evidence is also undisputed that Collins *demanded* that plaintiff settle the claims for the policy limit four days before the settlement offer deadline. After receiving this communication, Waxler attempted to contact Collins numerous times in order to discuss defendants' contribution to the settlement to no avail. When Waxler finally contacted Collins the day of the settlement deadline, Collins again demanded that plaintiff settle the claims for the policy limit. Accordingly, because defendants hired independent counsel after Markel's explicit notification of their right to do so and because defendants demanded that Markel accept Cole's settlement offer, defendants cannot demonstrate that plaintiff failed to inform them of their right to assume their own defense or that plaintiff failed to make an express notification of the its intent to accept the settlement offer.

Therefore, defendants' motion for summary judgment is DENIED.

## B. Plaintiff's Motion for Summary Judgment

Plaintiff filed a counter-motion for summary judgment, asserting that there are no genuine issues of material fact as to the validity of Markel's position that there is no coverage for the damages sought in the Cole litigation. Specifically, plaintiff contends that defendants acted willfully and intentionally disregarded California's sexual harassment and antidiscrimination laws. As such, plaintiff contends that it is entitled to all sums advanced to settle the litigation.

■■ An insurer bears the burden of proof in proving that a statutory or policy exclusion or limitation applies to bar or limit coverage under an insurance policy. *Clemmer v. Hartford Ins. Co.*, 22 Cal.3d 865, 879–80, 151 Cal.Rptr. 285, 587 P.2d 1098 (1978); *see Raychem Corp. v. Fed'l Ins. Co.*, 853 F.Supp. 1170, 1175 (N.D.Cal. 1994). Exclusion 1 in the Policy precludes coverage for a claim "based on conduct of the Insured or at the Insured's direction that is committed with wanton, willful, reckless or intentional disregard of any law or laws that is or are the foundation for the Claim." Further, California Insurance Code § 533, an implied exclusionary clause read into all insurance polices, bars coverage for intentional and willful acts of the insured. Cal. Ins.Code § 533 ("An insurer is not liable for the loss caused by the wilful act of the insured; but he is not exonerated by the negligence of the insured, or the insured's agents or others."); *Downey Venture v. LMI Ins. Co.*, 66 Cal. App.4th 478, 78 Cal.Rptr.2d 142 (1998). The purpose of the statutory exclusion is to preclude indemnification for conduct that is "clearly wrongful and necessarily harmful." *Mez Indus., Inc. v. Pac. Nat'l Ins. Co.*, 76 Cal.App.4th 856, 90 Cal. Rptr.2d 721 (1999). Accordingly, "section 533 precludes indemnification for liability arising from deliberate conduct that the insured expected or intended to cause damage." *Shell Oil Co. v. Winterthur Swiss Ins. Co.*, 12 Cal.App.4th 715, 15 Cal. Rptr.2d 815 (1993); *Unified W. Grocers,*

*Inc. v. Twin City Fire Ins. Co.*, 457 F.3d 1106, 1112 (9th Cir.2006) ("Section 533 does not bar coverage for conduct which may be wrongful, but which was not intentional or willful from the standpoint of the insured.").

■ However, in determining whether an unproven claim is covered by an applicable insurance policy, courts should be "reluctant to frame coverage based on isolated allegations in the underlying complaint." *Unified W. Grocers, Inc.*, 457 F.3d at 1112. "The third party complainant, who may overstate the claims against the insured, should not be the arbiter of the policy's coverage." *Id.* (quoting *Gon v. First State Ins. Co.*, 871 F.2d 863, 869 (9th Cir.1989)). Moreover, "[w]hen a settlement of the underlying claim has been made, the question of whether the liability of the insured was one which the contract of insurance covered is still open and may be litigated and determined" in a subsequent action. *Everett Assocs., Inc. v. Transcontinental Ins. Co.*, 159 F.Supp.2d 1196, 1209 (N.D.Cal.2001) (citing *Lamb v. Belt Casualty Co.*, 3 Cal.App.2d 624, 631–32, 40 P.2d 311 (1935)).[5]

### 1. Retaliation and Wrongful Termination in Violation of Public Policy

■ Two of the claims brought in the Cole litigation, the retaliation claim and the wrongful termination in violation of public policy claim necessarily implicate willful and intentional conduct on the part of the insured. Specifically, Cole alleged that defendants terminated her because she complained about sexual harassment in the work place. A termination affirmatively undertaken with the intent to interfere with sexual discrimination laws and in violation of public policy cannot be the result of negligence because liability "*necessarily* involves willful and intentional misconduct" based upon impermissible motivation. *B & E Convalescent Ctr. v. State Compensation Ins. Fund*, 8 Cal.App.4th 78, 95, 98, 9 Cal.Rptr.2d 894 (1992) (emphasis in original) (holding that a termination of employment for which a tort action will lie is an intentional and wrongful act in which the harm is inherent). A termination in violation of FEHA or public policy can "*only* be established by evidence of an employer's motive and intent to violate or frustrate the law(s) declaring or establishing fundamental public policy." *Id.* at 99, 9 Cal.Rptr.2d 894.

■ Accordingly, under both Exclusion 1 and § 533, defendants would not be entitled to indemnification for these claims in the Cole litigation. Therefore, plaintiff's motion for summary adjudication is GRANTED with respect to any settlement money attributable to payment for these claims.[6]

### 2. Sexual Harassment and Defamation/Slander

■ However, the remaining claims in the Cole litigation do not necessarily implicate intentional or willful conduct. California courts have acknowledged that in analyzing the applicability of exclusions or § 533, the court "must not paint with too wide a brush." *Uhrich v. State Farm Fire & Cas. Co.*, 109 Cal.App.4th 598, 614,

---

5. Because it is irrelevant to its conclusions, the court does not address whether the settlement creates a presumption of liability or the amount of such liability. *Compare Lamb*, 3 Cal.App.2d at 631, 40 P.2d 311 *with Isaacson v. Cal. Ins. Guarantee Ass'n*, 44 Cal.3d 775, 793–94, 244 Cal.Rptr. 655, 750 P.2d 297 (1988).

6. Plaintiff has failed to set forth any evidence regarding what, if any, amount of the settlement can be attributed to coverage of these two claims. Accordingly, the court makes no finding with respect to the amount of money that should be reimbursed to plaintiff.

135 Cal.Rptr.2d 131 (2003); *Melugin v. Zurich Canada,* 50 Cal.App.4th 658, 661, 57 Cal.Rptr.2d 781 (1996). "[W]here allegations are 'inseparably intertwined' with noncovered intentional conduct, there is no coverage." *Uhrich,* 109 Cal.App.4th at 615, 135 Cal.Rptr.2d 131; *see Marie Y. v. Gen. Star Indem. Co.,* 110 Cal.App.4th 928, 2 Cal.Rptr.3d 135 (2003) (allegations of negligence do not give rise to the duty to indemnify where the negligent conduct is "so intertwined with intentional and willful wrongdoing as to be inseparable from the wrongdoing"). But, "[n]either precedent nor logic dictates that an employer who wrongfully terminates an employee cannot also be liable for other intentional torts or for torts of negligence against the victim which are apart from, and not integral to, the wrongful termination." *Lesser v. State Farm Fire & Cas. Co.,* No. CV–95–4154, 1996 WL 339854, at *8 (C.D.Cal. June 14, 1996); *see Unified W. Grocers,* 457 F.3d at 1114 (noting that the allegations of negligent conduct are not inseparably intertwined with the allegations of willful conduct because the damages alleged "do not unavoidably originate from intentional and willful conduct by the insured"). The burden is on the insurer to demonstrate that the other alleged misconduct was necessarily part of the intentional wrongful conduct. *Horace Mann Ins. Co. v. Barbara B.,* 4 Cal.4th 1076, 1082, 17 Cal.Rptr.2d 210, 846 P.2d 792 (1993).

■ In this case, plaintiff has failed to proffer any evidence or argument that Cole's retaliation and wrongful termination claims are inseparable from the harassment and defamation claims. Further, other courts have found that sexual harassment claims against a party that asserts the conduct was consensual or welcome are not so intertwined with wrongful termination claims as to necessarily bar coverage. *See Lesser,* 1996 WL 339854, at *7–8; *David Kleis, Inc. v. Superior Court,* 37 Cal.App.4th 1035, 1050, 44 Cal.Rptr.2d

181 (1995); *see also Save Mart Supermarkets v. Underwriters at Lloyd's London,* 843 F.Supp. 597 (N.D.Cal.1994); *cf. State Farm Fire & Cas. Co. v. Century Indem. Co.,* 59 Cal.App.4th 648, 663–64, 69 Cal. Rptr.2d 403 (1997) (holding that failure to report was related directly and solely to charges of child molestation). Accordingly, the court concludes that plaintiff has failed to demonstrate that the applicability of Exclusion 1 and § 533 to Coles's retaliation and wrongful termination claims extend to her harassment and defamation claims.

■ Moreover, plaintiff has failed to establish that the underlying harassment and defamation claims in the Cole litigation were necessarily based on intentional or willful conduct. *Melugin,* 50 Cal. App.4th at 666, 57 Cal.Rptr.2d 781 (holding that § 533 does not bar coverage for all claims of sexual harassment and discrimination because not all acts are necessarily intentional). With respect to Cole's harassment claim, defendants present evidence that Anderson believed the conduct at issue was welcome. Specifically, Cole engaged in much of the conduct complained of and referred to herself as a "bitch" and "whore" prior to Anderson's use of those terms. *See Lesser,* 1996 WL 339854, at *7–8 (holding that sexual harassment claim was not necessarily intentional where insured presented evidence that he believed the relationship was consensual); *David Kleis, Inc.,* 37 Cal. App.4th at 1050, 44 Cal.Rptr.2d 181 (same); *see also Quigley v. Travelers Prop. Cas. Ins. Co.,* 630 F.Supp.2d 1204, 1219–20 (E.D.Cal.2009) (holding that § 533 did not necessarily bar coverage where the insured did not admit intentional sexual misconduct and the insurer did not conclusively demonstrate intentional molestation). With respect to Cole's defamation claim, defendants present evidence that

Anderson did not intend for the email to identify Cole as the subject of the defamatory writing. Specifically, Anderson did not identify Cole by name and the recipient of the email, Carroll, asserts that he did not know which employee was referred to in the email. Accordingly, the court cannot conclude as a matter of law that defendants intentionally or willfully harassed or defamed Cole.

Plaintiff's reliance on *Coit Drapery Cleaners, Inc. v. Sequoia Insurance Co.*, 14 Cal.App.4th 1595, 18 Cal.Rptr.2d 692 (1993) is misplaced, as the facts before the court in that case are materially distinguishable from the facts before the court in this case. In *Coit Drapery,* the insured and managerial employees had been found liable for sexual harassment arising out of, inter alia, the attempt to force an unwilling subordinate employee to the floor for intercourse and the threat to fire that employee for refusing sexual favors. *Id.* at 1602, 18 Cal.Rptr.2d 692. The evidence demonstrated that the conduct was "part of a consistent course of sexual harassment," and there were "no unresolved factual issues as to the intentionality" of the conduct. *Id.* at 1608, 18 Cal.Rptr.2d 692. Therefore, the court concluded that § 533 barred coverage. However, in this case, there are disputed issues of fact regarding whether the underlying sexual harassment claim was based upon intentional conduct. Defendants present evidence that Anderson perceived the comments at issue to be welcomed by plaintiff.

Therefore, plaintiffs's motion for summary adjudication is DENIED with respect to any settlement money attributable to payment for these claims.

## CONCLUSION

For the foregoing reasons, defendants' motion for summary judgment is DENIED, and plaintiff's counter-motion for summary judgment is GRANTED in part and DENIED in part.

IT IS SO ORDERED.