Filed 8/28/24  Brothers v. Heritage Logistics CA4/3

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| JAMES JOHN BROTHERS et al., | |
| Plaintiffs and Appellants, | G063267 |
| v. | (Super. Ct. No. RIC1904276) |
| HERITAGE LOGISTICS, LLC, et al., | ORDER MODIFYING OPINION AND DENYING PETITION FOR REHEARING; |
| Defendants and Respondents. | NO CHANGE IN JUDGMENT |

It is ordered that the opinion filed herein on July 30, 2024, be modified as follows:

The first full paragraph on page 12, beginning "Many of the other factors" through "from Heritage for the year 2019" is deleted.

\*          \*          \*

These modifications do not effect a change in the judgment. The petition for rehearing is DENIED.


GOODING, J.

WE CONCUR:


O'LEARY, P. J.


MOTOIKE, J.

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| JAMES JOHN BROTHERS et al., | |
| Plaintiffs and Appellants, | G063267 |
| v. | (Super. Ct. No. RIC1904276) |
| HERITAGE LOGISTICS, LLC, et al., | O P I N I O N |
| Defendants and Respondents. | |

Appeal from judgments of the Superior Court of Riverside County, Daniel A. Ottolia, Judge. Reversed with directions.

The Vartazarian Law Firm, Steve Vartazarian, Matthew J. Whibley; The Ehrlich Law Firm and Jeffrey I. Ehrlich for Plaintiffs and Appellants.

Yoka|Smith, R. Bryan Martin and Kimbery A. Byrge for Defendants and Respondents.

*  *  *

In 2019, appellant James John Brothers suffered a catastrophic injury when a dump truck driven by Sergio Ortega backed into Brothers at a construction site. Ortega was delivering asphalt purchased from respondent CalMat Co., Inc. doing business as Vulcan Materials Company, Western Division (CalMat). CalMat's sister company, respondent Heritage Logistics, LLC (Heritage), arranges for delivery of asphalt and other materials purchased from CalMat. At the time of the accident, Ortega had been delivering CalMat's asphalt for nearly a decade—first through a broker named Titan Materials and later, beginning sometime in 2013, through Heritage. Ortega delivered CalMat materials five to six days a week. He did not deliver materials for anyone else.

Brothers and his wife, appellant Betty R. Summerville, brought a negligence action against Ortega, CalMat, and Heritage, seeking compensation for Brothers's injury and Summerville's loss of consortium. Among other things, appellants alleged CalMat and/or Heritage employed Ortega and were therefore vicariously liable for Ortega's negligent acts committed in the scope of his employment. The trial court found, as a matter of law, that Ortega was not employed by either entity, but was an independent contractor. The court entered separate judgments in favor of CalMat and Heritage. We find there is a triable issue of material fact regarding Ortega's employment status and reverse the judgments.

FACTUAL HISTORY

CalMat and Heritage are both subsidiaries of an entity called Vulcan Materials Company, which is not a party to this action. CalMat owns

2

and operates quarries and plants in California that provide materials for use in construction. CalMat is a licensed private motor carrier, capable of transporting its own construction materials. CalMat does not, however, deliver its own materials, instead using freight brokers to arrange for delivery. Heritage, CalMat's sister company, is a freight broker. CalMat arranges for delivery of its materials through Heritage. Ninety percent of Heritage's work as a freight broker is for CalMat. Heritage uses approximately 500 truck drivers throughout the state to transport CalMat's materials from and to various sites. Ortega, who delivers asphalt loads from a quarry in Corona, is one of those drivers.

Ortega held a Class A California driver's license and, using his own dump truck, operated under the name J&I Transportation (J&I). Ortega began delivering materials for CalMat in 2010. In early 2013, when CalMat began using Heritage as its broker, Ortega continued delivering CalMat materials through Heritage. In 2019—the year of the accident—Ortega worked exclusively delivering CalMat materials five to six days a week.

Heritage required all its drivers to enter into a written carrier/broker agreement provided by Heritage. Ortega entered into such an agreement in 2015 (the Agreement). The Agreement states Ortega will perform services as an independent contractor. The Agreement is for the term of one year, automatically renewable for successive one-year periods. The Agreement was in effect at the time of the 2019 accident.

On July 29, 2019, Ortega delivered asphalt purchased from CalMat to a middle school in Menifee, California for a re-paving project. Ortega took his first load of asphalt to the school at 7:43 a.m. After delivering some asphalt to another site, Ortega was directed by Heritage to deliver another load of asphalt to the school. While he was at the school delivering

3

the second load of asphalt, Ortega backed into Brothers, causing devastating injury to Brothers's leg.

Brothers and Summerville filed an action against Ortega, J&I, CalMat, and Heritage. Brothers and Summerville alleged two causes of action based on Brothers's injury, one for negligence and the other labeled a claim for "alter ego." Summerville asserted an additional cause of action for loss of consortium. The complaint alleged CalMat and Heritage were alter egos of one another and joint venturers.

In August 2022, CalMat and Heritage filed separate, but largely duplicative, motions for summary judgment or, in the alternative, summary adjudication.[1] Each motion sought summary judgment on the grounds the moving party (1) did not own or operate the truck involved in the accident; (2) did not negligently entrust Ortega with the truck involved in the accident; and (3) did not employ, supervise, or control Ortega at the time of the accident. Neither motion addressed the alter ego or joint employment allegations made in the complaint.

On February 10, 2023, the trial court granted both motions on the ground Ortega was not an employee of either CalMat or Heritage, and it entered separate judgments in favor of CalMat and Heritage.

Brothers and Summerville appeal the judgments, arguing (1) there is a triable issue of material fact whether Ortega was an employee of either CalMat or Heritage, (2) CalMat and Heritage are not distinct entities, and (3) even if Ortega were an independent contractor, a triable issue exists

---

[1] CalMat's and Heritage's motions for summary judgment and supporting separate statements are nearly identical to one another. The few minimal differences are not relevant to this appeal. Apparently in recognition of this overlap, CalMat and Heritage filed a single respondent's brief, addressing the issues jointly.

4

as to whether CalMat and Heritage are liable under the retained control exception to the *Privette* doctrine.[2] Because we conclude there is a triable issue of material fact as to the existence of an employment relationship between Ortega and CalMat and/or Heritage, we reverse the judgments entered in favor of CalMat and Heritage.

DISCUSSION

I.

STANDARD OF REVIEW

A defendant moving for summary judgment can succeed either by showing "one or more elements of the cause of action . . . cannot be established, or that there is a complete defense to the cause of action." (Code Civ. Proc., § 437c, subd. (p)(2); *Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 860.) As the moving parties, CalMat and Heritage bore the burden of persuading the trial court there is no triable issue of material fact and they are therefore entitled to judgment as a matter of law. (*Id.* at p. 861.)

"We review a grant of summary judgment de novo; we must decide independently whether the facts not subject to triable dispute warrant judgment for the moving party as a matter of law." (*Intel Corp. v. Hamidi* (2003) 30 Cal.4th 1342, 1348.) In our de novo review, "'[w]e examine (1) the

---

[2] Under *Privette v. Superior Court* (1993) 5 Cal.4th 689 (*Privette*), "a person or entity that hires an independent contractor to do work generally is not liable for on-the-job injuries to the independent contractor's workers." (*Miller v. Roseville Lodge No. 1293* (2022) 83 Cal.App.5th 825, 831–832.) CalMat and Heritage raised the *Privette* doctrine as a basis for summary adjudication, and Heritage asserted it as a fourth ground for summary judgment. The doctrine is premised on the existence of an independent contractor relationship. Because a triable issue of material fact exists regarding Ortega's employment status, whether the *Privette* doctrine (or any exception to it) applies cannot be determined at this stage of the proceedings.

5

pleadings to determine the elements of the claim, (2) the motion to determine if it establishes facts justifying judgment in the moving party's favor, and (3) the opposition—assuming movant has met its initial burden—to "decide whether the opposing party has demonstrated the existence of a triable, material fact issue."'" (*Kim v. County of Monterey* (2019) 43 Cal.App.5th 312, 323.) "[W]e view the evidence in the light most favorable to plaintiffs as the losing parties. [Citation.] . . . [W]e liberally construe plaintiffs' evidentiary submissions and strictly scrutinize defendants' own evidence, in order to resolve any evidentiary doubts or ambiguities in plaintiffs' favor." (*Wiener v. Southcoast Childcare Centers, Inc.* (2004) 32 Cal.4th 1138, 617.) The party opposing a summary judgment motion need only dispute the moving party's material facts, not disprove them. (*Welborne v. Ryman-Carroll Foundation* (2018) 22 Cal.App.5th 719, 726–727.)

## II.

### PROCEDURAL ISSUES

A motion for summary judgment must be supported by a separate statement "setting forth plainly and concisely all material facts that the moving party contends are undisputed. Each of the material facts stated shall be followed by a reference to the supporting evidence. The failure to comply with this requirement of a separate statement may in the court's discretion constitute a sufficient ground for denying the motion." (Code Civ. Proc., § 437c, subd. (b)(1).) The California Rules of Court require references to the supporting evidence to "include reference to the exhibit, title, page, and line numbers." (Cal. Rules of Court, rule 3.1350(d)(1)(3).)

Neither CalMat nor Heritage complied with these requirements. The deposition evidence cited in their separate statements of undisputed facts does not include any references to page or line numbers. As an example,

6

undisputed material fact number 18 (identical in each separate statement) asserts "Heritage has never had any control over how Ortega or J&I performed its [sic] work as Independent Contractors" and cited, as supporting evidence, the "Deposition Transcript of Sergio Ortega," the "Deposition Transcript of Andy Van Schaik," the "Deposition Transcript of Grant Hughes" and "Cardenas Decl. ¶¶ 16–17." Although CalMat and Heritage submitted dozens of pages from these three deposition transcripts, they did not cite a single page and line number from any of them, thus effectively foisting onto the trial court the burden of combing through the deposition testimony and trying to guess which sections of testimony CalMat and Heritage might be relying on to support the allegedly undisputed fact. And undisputed material fact number 18 is not an anomaly. None of the evidence referenced in CalMat's and Heritage's separate statements—including, e.g., deposition transcripts and written discovery responses—included any reference to the page and line numbers where the purportedly critical evidence could be found. The court would have been well within its discretion to deny both motions based on these deficiencies alone. In an admirable display of patience, the court did not deny the motions on that ground, and we therefore review the grant of the two summary judgment motions de novo.

III.

INDEPENDENT CONTRACTOR/EMPLOYEE

Brothers and Summerville's complaint seeks to hold CalMat and Heritage liable for Ortega's negligence under three legal theories: (1) CalMat and/or Heritage are vicariously liable because Ortega was employed by CalMat and/or Heritage; (2) CalMat and Heritage are vicariously liable because Ortega was employed by one or both of the entities, who are alter egos of each other; and (3) CalMat and Heritage are jointly and severally

7

liable as joint venturers. The motions for summary judgment did not raise or address the alter ego or joint venture theories, presumably on the understanding or assumption they would only be relevant if there were an underlying employment relationship between Ortega and either CalMat or Heritage. Because neither theory was raised by the motions, they were not properly before the trial court, and we do not address them here.[3] (See *Kinda v. Carpenter* (2016) 247 Cal.App.4th 1268, 1277 [courts generally may consider only the grounds stated by the moving party].)

The trial court granted both motions for summary judgment, finding the undisputed facts showed, as a matter of law, Ortega was an independent contractor and not an employee of either CalMat or Heritage. "The distinction between an employee and an independent contractor is a significant one: With some exceptions, an employer is vicariously liable for the negligent acts of its employees, but not of its independent contractors." (*Bowman v. Wyatt* (2010) 186 Cal.App.4th 286, 299.) "This liability is based not on the employer's fault, but on public policies concerning who should bear the risk of harm created by the employer's enterprise. It is considered unjust, for example, for an employer to disclaim responsibility for injuries occurring

---

[3] During oral argument before this court, it was suggested the trial court had granted summary judgment to CalMat and Heritage on the issue of alter ego. The record shows otherwise. The court made a single reference to alter ego, found only in its ruling on CalMat's summary judgment motion: "Plaintiffs' contentions that CalMat is liable because Heritage is its agent, alter ego, or due to a joint venture also fail because Heritage and CalMat are not Ortega's employer." That is not a determination that Heritage or CalMat were entitled to summary judgment because they were not alter egos as a matter of law. It was simply an acknowledgment that the alter ego issue was irrelevant based on the court's finding that Ortega was an independent contractor. The court's ruling on Heritage's summary judgment motion makes no mention of alter ego.

in the course of its characteristic activities. [Citation.] Moreover, losses caused by employees' torts are viewed as a required cost of doing business, the risk of which an employer may spread through insurance." (*Yamaguchi v. Harnsmut* (2003) 106 Cal.App.4th 472, 481.)

"'The primary test of an employment relationship is whether the "'person to whom service is rendered has the right to control the manner and means of accomplishing the result desired. . . .'"'" (*Jackson v. AEG Live, LLC* (2015) 233 Cal.App.4th 1156, 1178–1179.) "The distinction between independent contractors and employees arose at common law to limit one's vicarious liability for the misconduct of a person rendering service to him. The principal's supervisory power was crucial in that context because '. . . [t]he extent to which the employer had a right to control [the details of the service] activities was . . . highly relevant to the question whether the employer ought to be legally liable for them. . . .'" (*S. G. Borello & Sons, Inc. v. Department of Industrial Relations* (1989) 48 Cal.3d 341, 350 (*Borello*).)[4] *Borello*, however, made clear the question of control is not the only factor to be considered in determining employment for vicarious liability purposes: "[T]he courts have long recognized that the 'control' test, applied rigidly and in isolation, is often of little use in evaluating the infinite variety of service

[4] There are two primary tests for determining employment status. The first, set forth in *Borello*, is appropriate for use where, as here, there is a question of vicarious liability for a tort. (*Whitlach v. Premier Valley, Inc.* (2022) 86 Cal.App.5th 673, 685–686.) The second, set forth in *Dynamex Operations West, Inc. v. Superior Court* (2018) 4 Cal.5th 903, is appropriate for use in wage order claims made by employees. (*Whitlach,* at pp. 686–687.) Effective September 4, 2020, Labor Code sections 2775–2787 codified and modified both tests. (Stats. 2020, ch. 38, § 2.) Neither party argues for application of these statutes and, with limited exceptions not relevant here, they only apply to work performed on or after January 1, 2020. (Lab. Code, § 2785.)

9

arrangements." (*Borello, supra,* 48 Cal.3d at p. 350.) "[S]trong evidence in support of an employment relationship is the right to discharge at will, without cause." (*Ibid.*)

In addition to control and the right to discharge at will, *Borello* recognized 11 secondary factors to consider in determining whether a worker is an employee: (1) whether the worker is engaged in a distinct occupation or business; (2) whether the work is usually done under direction or by a specialist without supervision; (3) the skill required; (4) whether the worker supplies the necessary equipment and the place of work; (5) how long the services are to be performed; (6) how the worker is paid, whether by the time or the job; (7) whether the work is an integral part of the regular business of the hirer; (8) whether the parties believe they are entering into an employment relationship; (9) the worker's opportunity for profit or loss; (10) the worker's investment in necessary equipment or materials or employment of helpers; and (11) the permanence of the working relationship. (*Borello, supra,* 48 Cal.3d at pp. 351, 355.) "'Generally, . . . the individual factors cannot be applied mechanically as separate tests; they are intertwined and their weight depends often on particular combinations.'" (*Id.* at p. 351.) "Each service arrangement must be evaluated on its facts, and the dispositive circumstances may vary from case to case." (*Id.* at p. 354.)

The separate statements filed in support of the summary judgment motions by CalMat and Heritage did not address seven of the factors identified in *Borello*: the right to discharge at will; whether the work is usually done under direction or by a specialist without supervision; the skill required; how long the services are to be performed; the method of payment; the worker's opportunity for profit or loss; and the employment of helpers.

10

In opposition to the motions, appellants provided evidence that suggests an employment relationship under four of the seven factors not addressed by CalMat or Heritage. That evidence came primarily from the Agreement Heritage required Ortega to sign. First, the Agreement provides either party can terminate the relationship without cause on 45 days' notice. The right to discharge at will without cause is "'[s]trong evidence in support of an employment relationship.'" (*Borello, supra,* 48 Cal.3d at p. 351; see *Espejo v. The Copley Press, Inc.* (2017) 13 Cal.App.5th 329, 346, 348 [newspaper carriers who could be terminated on 30 days' notice without cause were employees] & *Antelope Valley Press v. Poizner* (2008) 162 Cal.App.4th 839, 854 [right to discharge at will on 30 days' notice supported finding of employment].) Second, the Agreement is for a period of a year and "automatically renew[s] for successive one (1) year periods." Appellants presented evidence that Ortega began providing services for CalMat in 2010 and had continued to do so through Heritage since 2013, Ortega did not deliver materials for anyone else, and Ortega delivered materials for Heritage five to six days a week. Lengthy service suggests an employment relationship. (*Antelope Valley Press v. Poizner, supra,* 162 Cal.App.4th at p. 855 [prolonged service is at odds with "the notion that an independent contractor is someone hired to achieve a specific result that is attainable within a finite period of time, such as plumbing work, tax service, or the creation of a work of art for a building's lobby"].) Third, the Agreement prohibited Ortega from working with any customer he met through his work with Heritage. This lack of opportunity for profit also suggests an employment relationship. (*People v. Czirban* (2021) 67 Cal.App.5th 1073, 1094 [inability to independently "incur profit or loss through their own pursuits" supports a finding of employment].) Fourth, the Agreement allows

11

Ortega to use helpers to perform a job, but only with Heritage's written consent—another fact that points in favor of employment. (*Johnson v. Berkofsky-Barret Productions, Inc.* (1989) 211 Cal.App.3d 1067, 1073–1074 [lack of helpers is a factor suggesting employment].)

Many of the other factors addressed in the motions for summary judgment also raise a triable issue of material fact whether Ortega was an employee. Although the Agreement identifies Ortega as an independent contractor, Heritage's sworn written discovery responses *denied* Ortega was an independent contractor. In addition, Ortega's written discovery responses stated he was an employee of both CalMat and Heritage and he believed he received a W-2 from Heritage for the year 2019.

There is one last significant factor we have not yet discussed— the right to control. The right to control is the "'primary test of an employment relationship.'" (*Jackson v. AEG, supra,* 233 Cal.App.4th at p. 1178.) CalMat and Heritage each asserted it did not retain or exercise any right of control over the work done by Ortega. Appellants, however, submitted evidence that (1) CalMat gave Ortega specific policies and procedures to follow on complicated jobs; (2) Ortega was required to return to the Corona quarry at the conclusion of each job, including the last job of the day; (3) a CalMat employee reported truck drivers who were "violating policies and procedures" to the foreman on site; (4) a CalMat employee called the drivers if they did not return to the quarry within the estimated time for delivery and return; and (5) drivers are monetarily penalized if they spend too long at the delivery site. Appellants also presented evidence that Heritage required Ortega to (1) perform a safety check of his truck before he arrived at the quarry; (2) have a cell phone and use a particular app that allowed Heritage to track him while he was out on a delivery; (3) arrive with a full

12

tank of gas every Monday morning for his truck to be weighed; and (4) obtain specific types of insurance coverage, in specified amounts, and name Heritage as an additional insured on those policies. Further, the Agreement explicitly allowed Heritage to impose performance metrics. As the Supreme Court noted in *Ayala v. Antelope Valley Newspapers, Inc.* (2014) 59 Cal.4th 522, 533, the issue is "not how much control a hirer *exercises*, but how much control the hirer retains the *right* to exercise." There was sufficient evidence here that CalMat and/or Heritage retained the right to control substantial aspects of Ortega's performance to make the existence of an employment relationship a question for the jury.

"The existence of an employment relationship is a question for the trier of fact, but can be decided by the court as a matter of law if the evidence supports only one reasonable conclusion." (*Angelotti v. The Walt Disney Co.* (2011) 192 Cal.App.4th 1394, 1404.) Here, the evidence did not support only one reasonable conclusion. Although moving parties submitted evidence supporting an independent contractor relationship, appellants submitted evidence supporting an employment relationship. "At its heart, this case involves competing, if not necessarily conflicting, evidence that must be weighed by a trier of fact." (*Arzate v. Bridge Terminal Transport, Inc.* (2011) 192 Cal.App.4th 419, 427.)

## DISPOSITION

The judgments entered in favor of CalMat and Heritage following the granting of their motions for summary judgment are reversed, with directions to the trial court to vacate its rulings on the summary judgment motions and enter new orders denying the motions. Brothers and Summerville shall recover their costs on appeal.

GOODING, J.

WE CONCUR:

O'LEARY, P. J.

MOTOIKE, J.

14